482    SUPREME COURT OF WISCONSIN.    [Oct.

State ex rel. Elliott v. Kelly, 154 Wis. 482.

STATE EX REL. ELLIOTT, Respondent, vs. KELLY, City Clerk, etc., and another, Appellants.

*September 18—October 7, 1913.*

*Officers:* De jure *and* de facto: *Compensation: Municipal corpora-tions: Powers of council: Creation of offices: Ordinances: Sub-mission to electors: Form of ballot: Salary, when and how fixed: Payment: "Claims and demands."*

1. Unless there is a *de jure* office there can be no incumbent of the office either *de jure* or *de facto*.

2. One performing the duties of a municipal office must, in order to entitle him to compensation for his services, be at least a *de facto* officer.

3. A city ordinance creating the office of "superintendent of trade and commerce" was presumably within the scope of the gen-eral power of the common council to legislate for the benefit of the trade and commerce of the city (sec. 925—52, Stats.) and to create such minor offices as it may deem necessary, fill such offices, and fix the salaries thereof (sec. 925—23, Stats.).

4. The mere fact that, upon the submission of such ordinance to vote of the electors under ch. 513, Laws of 1911 (sec. 39*i*, Stats.), the ballots were in such form that the voting was for or against establishing the office of "chamber of commerce," did not render nugatory the adoption of the ordinance by such vote.

5. Where, under the express power conferred by sec. 925—23, Stats., an office is created by the common council subsequent to the first regular meeting in February, so that the require-ment of sec. 925—30 as to providing salaries by ordinance at that meeting cannot reasonably apply, such new creation is to be considered as excepted from that requirement.

6. Power to create an office includes, by necessary inference, powei to provide a salary therefor where compensation for perform-ance of its duties is contemplated.

7. In providing a salary for an office to which the requirement of sec. 925—30, Stats., is not applicable, the common council may act by a resolution instead of by an ordinance.

8. Where a *de facto* officer has in good faith performed the duties of a municipal office to which he was in form appointed, and there is no adverse claimant of the salary, the city, if willing, may legally pay to him the salary provided for such office.

9. The requirement of sec. 925—134, Stats., that all claims and de-
mands against a city shall be presented in a specified way and
shall be passed upon in a particular manner before payment,
applies to unliquidated claims but not to a demand for the
fixed salary of an office, even though the demandant is only a
*de facto* officer, in case of the city having consented to pay.

APPEAL from a judgment of the circuit court for Lincoln
county: A. H. REID, Circuit Judge. *Affirmed.*

*Mandamus* action to compel the proper officers of the city
of Tomahawk to issue a municipal warrant to the relator for
salary as "superintendent of trade and commerce." The
cause, in due form, was submitted on a record showing the
following: The relator, during the term for which he sought
to recover compensation, had assumed to hold an official po-
sition in the city of Tomahawk, denominated "superintend-
ent of trade and commerce." He commenced the action to
obtain a warrant for his pay after the council had, in due
form, set aside a fund therefor and directed an order to be
issued accordingly. The city clerk, upon due demand, re-
fused to issue the warrant. Existence of the office depended
upon whether the following circumstances were efficient
therefor: An ordinance was duly proposed to the common
council of the city of Tomahawk, creating the office of "su-
perintendent of trade and commerce." The proposal was
accompanied by a request signed by more than twenty-five
per cent. of the persons who voted for governor in the city
at the last general election, for submission of the matter to a
vote of the electors of the city in case of the ordinance being
rejected by the council. It was rejected and, thereupon, a
resolution was adopted for such submission and directing the
city clerk to cause the proposed ordinance to be published and
notice of its submission, as requested, to be given and to pre-
pare for use the proper ballots in respect to the matter.

At the election held pursuant thereto the form of the ballot
denominated the office proposed to be established "office of

chamber of commerce." The vote was 170 for the proposed ordinance and 91 against it. The ordinance was duly published naming the office "superintendent of trade and commerce." July 4th thereafter the council, in form, fixed the salary of the office at $1,800, to be paid in monthly instalments of $150. Thereafter the relator was duly appointed to the office and the appointment was approved by the council. He was not a citizen of this state at the time of such appointment. He removed to the city of Tomahawk a few days prior thereto for the purpose of accepting the position if tendered. He duly took possession of the office to which he was appointed and performed its duties during the period covered by the salary claimed. The money was appropriated to pay such salary, the comptroller directed to issue an order therefor, such issuance demanded, and the same refused. There was no other claimant of the office during the period in question. Through oversight, the relator did not file his oath of office until after the termination of the period in question.

The trial court decided, among other things, that the relator was, at least, a *de facto* officer and entitled to a warrant for the salary, since the city council had set aside money to pay the same and directed issuance of a proper order. The discrepancy between the ordinance and ballot respecting the creation of the office was held immaterial, as the voters, doubtless, intended to vote on the question of adopting the ordinance.

*G. M. Sheldon,* for the appellants.

*J. R. Pfiffner,* for the respondent.

MARSHALL, J. The first question for solution is: Was there a *de jure* office in the city of Tomahawk, as claimed by the relator? Obviously, if otherwise, there could not be an incumbent, either *de jure* or *de facto,* of such place, and a holding of at least the latter dignity would be required in

order to entitle the relator, under any circumstances, to compensation for his services.

It does not clearly appear from the name, "superintendent of trade and commerce," that the duties of the place in question were other than of a municipal character.   Possibly, as suggested by counsel for' appellants, the purpose in creating the office was to accomplish a laudable though not, really, an authorized public purpose; but any fair indication that the contemplated official duties are substantially within the scope of the granted municipal authority, would preclude holding that the proceedings to establish the office are *ultra vires.* There seems to be such indication.   The general-welfare feature of the city charter is very broad.   It affords the common council of a city a large measure of power to legislate for the benefit of trade and commerce.   Sec. 925—52, Stats.   The council may also create such minor offices as it may deem necessary (sec. 925—23), fill such offices, and fix the salary incidents.   All reasonable presumptions must be indulged in that there was no intention to depart from the scope of the broad powers, conferred as aforesaid, and none in fact. From such premises, it is considered that the municipality possessed power to create such an office as the one in question.

It is considered that the proposed ordinance creating the office of "superintendent of trade and commerce" was duly adopted by referendum to the electors of the city, under ch. 513, Laws of 1911 (sec. 39*i*, Stats.).   The fact that the voting was for or against establishing the office of "chamber of commerce," instead of "superintendent of trade and commerce," is not fatally material.   The voters evidently intended to take sides at the polls in respect to the question raised by the proposed ordinance.   In voting, as they did, they intended to express their will as to whether such ordinance should be adopted or rejected.   They knew what it was for.   It had been brought to their attention in the manner provided by law.   Now should their decision be held for

naught merely because the city clerk failed to furnish ballots stating, literally, the question to be passed upon? It would be contrary to the evident wishes of the people and to the modern trend of judicial thought, to hold that any such accuracy is required. So long as it is reasonably clear that the electors expressed their will respecting the adoption of the ordinance, the fact that they did it somewhat inartificially should not be regarded as rendering their effort inefficient. The statute requires the ballot in such a case to contain "a concise statement of the nature" of the ordinance. Any brief collection of words which will fairly accomplish that, is sufficient.

So we reach the conclusion that there was such an office in the city of Tomahawk as "superintendent of trade and commerce" when the relator, in due form, was appointed thereto, and that during the term in question he was the only person assuming to have the right to fill such office, or attempting to do so.

It is insisted that there was no salary incident to the office because the charter (sec. 925—30, Stats.) declares that the salary of a city office shall be provided by ordinance at the first regular meeting in February as to every officer entitled to a salary, who may be elected or appointed during the ensuing year; whereas the salary in this case was provided by resolution in June after the office was created and on the day that it was, in form, filled. Reliance is placed on *Herman v. Oconto,* 100 Wis. 391, 76 N. W. 364.

Doubtless under the mandatory provision of the city charter as to situations contemplated by it,—that is, existing offices to be filled during the year subsequent to the first regular meeting in February,—the power of the common council, as to fixing salaries, is limited to exercise at such meeting. But does that preclude providing a salary for an office legitimately created during such ensuing year, notwithstanding the broad power conferred upon the council by sec. 925—23,

to create such municipal offices as it may deem necessary, and providing that such power, under some circumstances, may be exercised by a referendum to the electors at the next regular election after due request therefor? If so, then the power—unlimited in the letter of the law—to create such an office as the one in question, is so modified by the provision respecting the time of fixing salaries, that though an office be created and filled, there is no authority to make power in that respect effective by providing a salary until the expiration of nearly a year.

The situation suggested creates obscurity as to the legislative intention, which calls for judicial construction, since it is not reasonable to suppose that such purpose was to clothe the municipality with power to create an office and fill it, coupled with disability, for a long period, to compensate the official. There is no rule respecting the scope of municipal authority more clearly elementary than the one that, a city, through its governing body, possesses all powers expressly granted and such others as may be necessary or convenient to carry into execution the powers so granted. *Manske v. Milwaukee,* 123 Wis. 172, 101 N. W. 377. Power to create an office, by necessary inference, includes power to efficiently fill it by attaching thereto a salary incident, where compensation for performance of official duties is contemplated. Such power is a part of the written law as effectually as if expressed in words.

It must follow, in the absence of any prohibition to the contrary, that in case of the creation of an office, as in this case, to which the provision as to providing salaries at a particular time cannot reasonably apply, such new creation is to be considered as intended to be excepted therefrom and be dealt with under the implied power to do those things which are necessary or convenient to carry into execution the express power as to such matters. Therefore, the particular case is not within the limitations of sec. 925—23, and the sal-

ary of the officer in question was legitimately provided, as regards the time of municipal action.

What has been said sufficiently answers the contention that the action of the council is *ultra vires,* because had in the form of a resolution instead of an ordinance. The requirement as to action by ordinance has relation to the situations with which it deals. A common council, in the execution of its implied powers of legislation, is not restricted in all cases to action in any particular form. Any which will plainly express the legislative will and is reasonably appropriate to the case, is sufficient. By the provision of the general-welfare portion of the charter (sec. 925—52, Stats.) the common council may act by "ordinance, resolution, by-law or regulation," and any such act is given the force of law, provided it "be not repugnant to the constitution of the United States or of this state or the laws thereof,"—all in harmony with the common-law rule that an ordinance—technically, an enactment in the form of a by-law—is not essential unless required, expressly or by necessary inference. There is no express requirement covering the precise situation the council, in the particular instance, dealt with, and there is no reason why it could not as well have acted as it did as in a more formal way.

There is much confusion in the authorities in respect to whether municipal legislative action must be in the form of an ordinance, but the weight of authority is to the effect that, where that is not expressly required, a more informal method is sufficient, or the latter is to be given the effect of an ordinance where the exigencies of the particular case do not reasonably require the formal action. 1 Beach, Pub. Corp. §§ 484, 485.

This court in *Green Bay v. Brauns,* 50 Wis. 204, 6 N. W. 503, in treating of a city charter conferring broad powers upon the common council to act by ordinance, by resolution, or by-law, held that any mode of fixing a salary is efficient

provided the action is made to appear in the record in some written or permanent form. There the action was merely by adopting a motion and it was held sufficient, since the charter conferred the power to fix the salary without requiring it to be done in any particular manner. Such is the situation here since the particular case is not covered by sec. 925—23, relating to providing salaries for existing offices.

Several questions are presented bearing on whether the relator was a *de jure* officer which, as we view the case, need not be considered. There was no other claimant of the place. The relator was, in form, appointed thereto. He took possession of the office in good faith and had all the appearances of being, in fact, what he assumed to be. *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595. Under the circumstances, that he was at least, *de facto,* superintendent of trade and commerce, is plain. That being so, and the municipality having, in due form, provided for payment of his salary and ordered it paid, he was entitled thereto when this action was commenced.

We agree with counsel that such is the rule by the better, if not the weight of, authority. We decline to follow the lead of courts which deny the right to compensation to officers *de facto* who have, in good faith, performed the duties of a *de jure* office, when there is no other person who, under any circumstances, can properly claim the salary incident. The salary of an office is an incident thereto and not, necessarily, an incident to service by a *de jure* incumbent. Therefore, in case of the incumbency being, in good faith, by an officer *de facto,* and no adverse claimant, there is no justice in denying to the occupant the compensation incident to the place during such incumbency if the corporation is willing to grant it.

It will not throw any light on the right of this matter to discuss the conflict of authority. That is so great as not to admit of reconcilement. The decision here does not go so

far as to hold that a *de facto* officer may have an enforceable claim to the salary of a place held by him as a usurper, even in case of his acting in good faith, but only that in case of there being no adverse claimant of the salary, and no fraud, and the municipality being willing to compensate him, it may legally do so.

The fourth point is made that the charter provides that all claims and demands against the city shall be presented for allowance in a specified way and shall be passed upon in a particular manner before payment,—sec. 925—134,—and that no claim was so presented in this case. That does not apply to the salary incident of an office, but to unliquidated claims,—claims requiring the exercise of judgment by the administrative body as to the amount or liability, or both. That is not required in the case of a fixed salary. The fact that the demandant is a *de facto* officer makes no difference, in case of the municipality having consented to pay, as in this case.

There is no other question presented of sufficient dignity to require treatment. The decision of the trial court is right and must be affirmed.

*By the Court.*—So ordered.