STATE EX REL. THOMPSON, Attorney General, Petitioner, v. GIBSON and others, Respondents.

*December 2, 1963—January 10, 1964.*

278

280

281

For the petitioner the cause was argued by *Roy G. Tulane,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *Lyle E. Strahan,* deputy attorney general, and *Robert D. Martinson,* assistant attorney general.

For the respondents Gibson, Morton, Jankowski, Otto, Phillips, Koop, Zeidler, Lucey, Adamany, Melli, and Barn-

stable, there was a brief and oral argument by *Leonard F. Schmitt* of Merrill.

For the respondents Keliher and Knutson there was a brief by *Jasper, Winner, Perina & Rouse* of Madison, and oral argument by *John Winner.*

For the respondent Rahr and interpleaded respondent Charles F. Smith there was a brief by *Wm. J. P. Aberg* and *Carroll E. Metzner,* both of Madison, and oral argument by *Mr. Aberg.*

For the respondent Hidde there was a brief by *Geisler & Kay* of Madison, and oral argument by *Robert J. Kay.*

For the respondent Otto there was also a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau, and oral argument by *Walter H. Piehler.*

DIETERICH, J. The issues before this court are as follows:

I. Whether an appointment by the governor to an office which is unoccupied due to death or resignation of the incumbent is valid and effective when made where the appointment was made while the legislature was "adjourned" and has not been acted upon by the senate.

II. Whether an appointment by the governor to an office occupied by an incumbent holding over after expiration of his term is valid and effective when made where:

(1) The incumbent had been duly confirmed by the senate, and the appointment of his successor was made after the August 6th adjournment, and thus not confirmed.

(2) The incumbent had been duly confirmed by the senate, and was also holding over after expiration of his term pursuant to a specific "holdover clause" in the statutes pertaining to the office, and where the appointment of his successor was made after the August 6th adjournment.

(3) The incumbent, although confirmed by the senate, was past retirement age and a participating employee in the

Wisconsin retirement fund, and where the appointment of his successor was made after the August 6th adjournment.

III. Whether an appointment made during adjournment is valid and effective when made where the incumbent had never been confirmed by the senate, but whose term of office was to end in 1967.

## Wisconsin Constitution.

### Article IV.

Sec. 11. "MEETING OF LEGISLATURE. The legislature shall meet at the seat of government at such time as shall be provided by law, once in two years, and no oftener, unless convened by the governor, in special session, . . ."

### Wisconsin Statutes (1961).

Sec. 14.22. "APPOINTMENTS SUBJECT TO CONFIRMATION. Whenever the governor is authorized to make any appointment to office by and with the advice and consent of the senate, and the legislature is not in session at the time such office should be filled, he may make appointment thereto, subject to the approval of the senate at the next succeeding session of the legislature, and all such appointments shall be as valid and effectual from the time when so made until twenty days after such meeting of the legislature as if he possessed the absolute power of appointment."

Sec. 17.03. "VACANCIES, HOW CAUSED. Any public office, . . . shall become or be deemed vacant upon the happening of any of the following events:

"(1) The death of the incumbent.
"(2) His resignation.
"(3) His removal.
"(4) His ceasing to be an inhabitant of this state; . . .
"(5) His conviction by a state or United States court of and sentence for treason, felony or other crime of whatsoever nature punishable by imprisonment in any jail or prison for one year or more, or his conviction by any such court of and sentence for any offense involving a violation of his official oath, . . .

"(6) The decision of a competent tribunal declaring void his election or appointment or adjudging him insane.

"(7) The neglect or refusal of any person elected or appointed or re-elected or reappointed to any office to take and file his official oath or to execute or renew his official bond . . .

"(8) The neglect or refusal of any officer in office to execute and file an additional bond, when lawfully required, in the manner and within the time so required or prescribed by law.

"(9) The death or declination in writing of any person elected or appointed to fill a vacancy or for a full term before he qualifies, or his death or such declination before the time when, by law, he should enter upon the duties of his office to which he was elected or appointed.

"(10) On the happening of any other event which is declared by any special provision of law to create a vacancy.

"(11) Upon the failure of the first annual school meeting of a school district to elect school board members for the district.

"(12) The establishment of such offices upon the creation by the legislature of a new county and a new town, unless otherwise ordered by the legislature."

Sec. 17.20. "VACANCIES IN APPOINTIVE STATE OFFICES; HOW FILLED; TERMS. (1) *General.* Vacancies in appointive state offices shall be filled by appointment by the appointing power and in the manner prescribed by law for making regular full term appointments thereto, and appointees to fill vacancies therein shall hold office for the residue of the unexpired term or, if no definite term of office is fixed by law, until their successors are appointed and qualify.

"(2) *Interim vacancies; terms.* Vacancies occurring during the recess of the legislature in the office of any officer appointed by the governor by and with the advice and consent of the senate shall be filled by appointment by the governor for the residue of the unexpired term, subject to confirmation by the senate at the next regular session thereof if the term for which the person was so appointed has not expired. Any such appointment subject to confirmation by the senate shall be in full force until acted upon by the senate,

and when confirmed by the senate shall continue for the residue of the unexpired term."

The attorney general's position is that the power of the governor to appoint during a recess of the legislature depends upon a proper construction of secs. 14.22 and 17.20, Stats., and that under these sections, construed jointly, the governor can only appoint to fill vacancies. The respondent appointees contend that secs. 14.22 and 17.20 are separate in their application and that in the instant action the governor's power to appoint is governed by sec. 14.22, which is not restricted to vacancies.

Sec. 17.03, Stats., provides in part that any public office shall become or be deemed vacant upon the death, resignation, or removal of an incumbent officeholder. The attorney general concedes that all of the interim appointments to fill vacancies as defined in sec. 17.03 were proper "recess appointments" under sec. 17.20. That section provides that vacancies occurring during the recess of the legislature shall be filled by appointment by the governor for the remainder of the unexpired term, subject to confirmation by the senate at the next regular session of the legislature, and that such appointment shall be in full force until acted upon by the senate.

Sec. 14.22, Stats., provides that when the legislature is "not in session at the time such office should be filled" the governor may appoint a successor, subject to senate approval "at the next succeeding session of the legislature," and that all such appointments are valid until twenty days after such meeting of the legislature.

In support of their contention that the governor's appointments are valid under sec. 14.22, Stats., the appointees argue that the period of adjournment—August 6 to November 4, 1963—was a time when the legislature was "not in session" within the meaning of that statute. The attorney general

also concedes that there is no practical difference between the terms "not in session" (as found in sec. 14.22), and "during the recess" (as found in sec. 17.20 (2)). However, respondents Rahr, Charles Smith, Keliher, and Knutson, contend that the legislature was "in session" during the period of adjournment from August 6 to November 4, 1963, and that sec. 14.22 does not apply.

Sec. 11, art. IV of the Wisconsin constitution, provides in part that the legislature shall meet at the seat of the government "once in two years, and no oftener" unless called into special session by the governor. This section, while not controlling in the instant action, is of great aid in interpreting the statutes in question, in that it clearly specifies that there is but one biennial "session" of the legislature.[3] If there is only one biennial legislative session, then the legislature, having convened on January 9, 1963, could not, if it had terminated its session, again convene, except in special session at the call of the governor, until January, 1965. When both houses "adjourned" on August 6, 1963, it was expressly provided that the adjournment was only until November 4, 1963, and such an adjournment did not operate to dissolve the 76th session of the Wisconsin legislature.

Sec. 17.20 (2), Stats., uses the word "recess" as opposed to the phrase "not in session" as found in sec. 14.22. Webster's New International Dictionary (3d ed., unabridged), defines "recess" as a "suspension of business or procedure (as of a legislative body, court, school) for a comparatively short time." We determine that the temporary adjournment of the legislature from August 6, 1963, to November 4, 1963, constituted a recess. See *State ex rel. Sullivan v. Dammann* (1936), 221 Wis. 551, 555, 267 N. W. 433. Since sec.

---

[3] This court recognized that there is but one biennial session of the state legislature in *State ex rel. Sullivan v. Dammann* (1936), 221 Wis. 551, 562, 267 N. W. 433.

14.22 refers to appointments made when the legislature is not in session (*i.e.*, where there has been termination or dissolution of a session) and sec. 17.20 applies where the legislature is in recess (*i.e.*, a temporary adjournment during the biennial session), it necessarily follows that sec. 14.22 has no application to the appointments in question and the case resolves itself to a determination of the application of secs. 17.20 and 17.03. The ordinary form of termination of a session is by *sine die* adjournment, although we do not here decide that there could be no other form of adjournment which would terminate the session. We hold that one single session may be interrupted by recesses, and validly continue after a recess as long as such recesses can reasonably be said to be taken for a proper legislative purpose. The recess in the instant action fulfilled this requirement.

It is clear from the language of sec. 17.20 (2), Stats., that this section applies only where there are "vacancies" in the appointive offices. The attorney general contends that there can be no vacancy when there is an incumbent lawfully holding over after expiration of his term, while the appointees argue that a vacancy does exist under such circumstances. Under sec. 10, art. XIII of the Wisconsin constitution, the power to declare when an office shall be deemed to be vacant is vested in the legislature. Sec. 17.03 provides that an office shall be deemed to be vacant upon (among other things) the death, resignation, or removal of the incumbent, but nowhere is it declared that an office is vacant when an incumbent holds over after expiration of the term for which he was initially appointed.

Since the legislature has the power to declare the circumstances under which an office shall be deemed vacant, and has so declared in sec. 17.03, Stats., and since there is no provision in that statute, or any other, providing that a vacancy exists when a lawful appointee holds over, it cannot

be said that an office is "vacant" for the purposes of sec. 17.20, where the incumbent holds over after expiration of his term.

We now apply the principles stated above to the individual appointments made by Governor John W. Reynolds during the three-month recess of the legislature from August 6, 1963, to November 4, 1963.

### The Appointments to Fill Vacancies.

*Mrs. Joseph Melli* was appointed a member of the board of public welfare during the interim period to succeed Margaret D. Beck, deceased. Thus a vacancy existed within the meaning of sec. 17.20 (2), Stats. Under secs. 17.03 and 17.20 (2) it is clear, as the attorney general concedes, that Mrs. Melli's appointment was valid and that she is entitled to hold office unless and until her appointment is rejected by the senate.

*David Adamany* was appointed to the public service commission on September 19, 1963, to succeed Stanley P. Hebert, who had resigned his position on the commission. While the attorney general does not question the validity of Adamany's appointment, the provisions of the statute which creates the office of member of the commission, raise some doubt as to his eligibility to serve before confirmation by the senate. Sec. 195.01 (1), Stats., provides in part as follows:

"A public service commission is hereby created to be composed of 3 commissioners to be appointed by the governor and confirmed by the senate, but no commissioner shall act until confirmed."

If the above statute is made to apply to appointments made during a recess of the legislature, the language contained therein that "no commissioner shall act until confirmed" would be in direct conflict with the provisions of

sec. 17.20 (2), Stats., to the effect that appointments to fill vacancies shall be in full force until acted upon by the senate.

The general rule of statutory construction is that where two provisions are susceptible of a construction which will give operation to both, without doing violence to either, it is incumbent on the court to search for a reasonable theory under which to reconcile them so that both may be given force and effect.[4] Using the aforementioned rule as a guide, we construe the language contained in sec. 195.01 (1), Stats., "but no commissioner shall act until confirmed," as not applying to recess appointments made by the governor pursuant to the provisions of sec. 17.20 (2). The respondent Adamany, having been appointed to the public service commission during a recess, has properly assumed the duties of his office, and may continue therein unless and until his appointment is rejected by the senate.

Respondents *Zeidler* and *Koop* were appointed to fill vacancies prior to the August 6th adjournment, and no action was taken on their appointments before the legislature adjourned on August 6, 1963. The governor reappointed Zeidler and Koop on September 26 and October 8, 1963, respectively, while the legislature was in adjournment. Neither appointment is challenged by the attorney general, and in view of the fact that both offices had been vacant, their appointments while the legislature was in recess were valid and effective when made under secs. 17.03 and 17.20 (2), Stats.

*Patrick Lucey* was appointed to the investment board prior to the August 6th adjournment to fill the office left unoccupied by the resignation of the former incumbent. Lucey's appointment was not acted upon by the senate, and he was reappointed by the governor on September 23, 1963, during the interim period. Since Lucey was appointed to fill

---

[4] *State ex rel. Williams v. Samuelson* (1907), 131 Wis. 499, 506, 507, 111 N. W. 712.

a vacancy, his appointment was valid and effective when made under secs. 17.03 and 17.20 (2), Stats., and he is entitled to hold office unless and until rejected by the senate. Our decision as to the validity of Lucey's appointment has no bearing upon any possible questions as to his eligibility under statutes pertaining to membership on the board.

### *The Appointments to Offices Occupied by Holdover Incumbents.*

Respondents *Gibson, Jankowski, Phillips,* and *Hanson* were appointed after the August 6th adjournment, to succeed incumbents who had been confirmed in office by the senate, and who were holding over after the expiration of their terms. None of the appointments have been confirmed by the senate. Since the legislature was in recess (as opposed to "not in session") when these appointments were made, and since the offices were not vacant within the meaning of sec. 17.20 (2), Stats., it follows that the appointments of the above-named respondents were ineffective in the absence of confirmation and that the incumbents Keliher, Rahr, O'Hara, and Charles Smith may hold over in office until their successors are duly appointed and confirmed by the senate.

Respondent *Morton* was appointed to the investment board on September 26, 1963, to succeed the incumbent Graner, whose appointment had been confirmed by the senate. Sec. 25.155, Stats., pertaining to trustees of the investment board, provides in part that all appointed trustees "shall serve until their successors have been appointed and have qualified." Graner is the only incumbent holding office after expiration of his term under such a statutory "holdover clause." Where there is an express statutory provision for holding over after expiration of an appointive term, it is even more clear that the office is not "vacant" within the

meaning of sec. 17.20 (2). See 43 Am. Jur., Public Officers, p. 236, sec. 484, where it is stated that one who has the legal right to continue in office after expiration of his term is an officer *de jure,* and not *de facto.* It follows that the appointment of respondent Morton to replace Graner was ineffective in the absence of confirmation.

Respondent *Otto* was appointed to the industrial commission during the recess to succeed the incumbent Knutson, whose appointment had been confirmed by the senate. The senate has taken no action on Otto's appointment. Otto argues that the office was vacant for the reason that the incumbent Knutson was a participating employee under the Wisconsin retirement fund, and therefore subject to the compulsory-retirement provisions of sec. 66.906 (1), Stats., of the Retirement Act. Knutson had reached the age of sixty-five in July, 1955, and his last appointment to the commission was in August, 1963, when he was seventy-three years of age.

Sec. 66.906 (1) (a), Stats., provides, in part, that any participating employee who has attained the age of sixty-five shall be retired at the end of the month in which such age is attained unless written notice is received by the retirement board that the body by which he is employed has specifically authorized such employee to continue in employment for a period not to exceed one year beyond such date. Knutson argues that even though no written notice was given as required by statute, the fact that the governor appointed him after he had reached the age of sixty-five satisfied the authorization and notice requirement for the reason that the retirement board takes judicial notice of the appointment.

Otto contends that under *State ex rel. Brunkhorst v. Krenn* (1959), 8 Wis. (2d) 116, 123, 98 N. W. (2d) 394, a vacancy existed in the office. It was stated in *Brunkhorst* that if the retirement of an employee or public officer is mandatory upon the happening of certain circumstances, it

follows that upon the happening of those circumstances there is a vacancy in the office occupied by him. This court then held that when circumstances occur which invoke mandatory retirement, there is a vacancy in the office concerned within the purview of sec. 17.03, Stats.

Even if the governor's appointment of Knutson in July, 1963, operated as an authorization and notice to the retirement board, it ceased to be effective as such on October 1, 1963, at the end of his term. In the instant action no written notice of an authorization for the continuation of Knutson in office beyond October 1, 1963, was filed with the retirement board as required by sec. 66.906 (1) (a), Stats. Therefore, Knutson's retirement became mandatory pursuant to the provision of that section. It follows that there was a vacancy in Knutson's office within the meaning of sec. 17.03 on October 7, 1963, when Otto was appointed. The appointment of Otto to succeed Knutson as a member of the industrial commission was therefore valid and effective when made and Otto is entitled to hold such membership unless and until rejected by the senate.

Respondent *Barnstable* was appointed to the board of examiners in chiropractic while the legislature was in recess. The incumbent Hidde had been appointed to the post in 1962, during an interim period, for a term ending April 1, 1967, but his appointment was never confirmed by the senate. The attorney general argues that Hidde held office only at the pleasure of the governor and that therefore the appointment of Barnstable operated as a removal of Hidde, thus creating a vacancy in the office within the meaning of secs. 17.03 and 17.20 (2), Stats. Hidde argues that he was holding over in office and that his situation is no different than that of the other holdovers, notwithstanding the fact that his original appointment was never confirmed by the senate.

Under sec. 17.07 (4), Stats., state officers "appointed by the governor alone" may be removed "by the governor at

pleasure." That section also provides that all officers appointed by the governor during the recess of the legislature whose appointments are required to be later confirmed by the senate shall be deemed to be "appointed by the governor alone" until so confirmed. Under the plain language of sec. 17.07 (4), it is clear that the appointment of Barnstable to succeed the unconfirmed incumbent Hidde, who held office only at the pleasure of the governor, operated to remove Hidde from office, and thus created a vacancy within the meaning of sec. 17.20 (2). It follows that the appointment of Barnstable to the board of examiners in chiropractic was valid and effective when made and he may continue in this post unless and until rejected by the senate.

*By the Court.*—Judgment is entered adjudging and determining as follows:

1. The following appointments, made by the governor, were valid and effective without the consent of the senate, when made, and upon qualifying as required by law the respondents hereinafter named became entitled to hold office thereunder until acted upon by the senate:

*Howard J. Koop,* appointed on October 8, 1963, as commissioner of administration;

*Frank P. Zeidler,* appointed on September 26, 1963, as director of the department of resource development;

*David Adamany,* appointed on September 19, 1963, as a member of the public service commission;

*George W. Otto,* appointed on October 7, 1963, as a member of the industrial commission;

*Mrs. Joseph Melli,* appointed on September 26, 1963, as a member of the state board of public welfare;

*J. W. Barnstable,* appointed on October 7, 1963, as a member of the state board of examiners in chiropractic.

2. The appointment of *Patrick J. Lucey* as a trustee of the state of Wisconsin investment board made by the gov-

ernor on September 23, 1963, was valid and effective without the consent of the senate, when made, and upon qualifying as required by law he became entitled to hold office thereunder until acted upon by the senate. No determination is now made of any challenge to his eligibility to serve in such office.

3. The following appointments, made by the governor, were ineffective without the consent of the senate:

*John Gibson,* appointed on October 8, 1963, as state auditor to succeed incumbent J. Jay Keliher;

*Walter O. Morton,* appointed on September 26, 1963, as trustee of the state of Wisconsin investment board to succeed incumbent Frank M. Graner;

*Harold J. Jankowski,* appointed on October 10, 1963, as member of the state conservation commission to succeed incumbent Guido Rahr;

*Dale Phillips,* appointed on September 26, 1963, as member of the savings and loan advisory committee to succeed incumbent Catherine J. O'Hara;

*Martin W. Hanson,* appointed on September 26, 1963, as member of the state conservation commission to succeed incumbent Charles F. Smith.

And the incumbents above named were entitled to continue to hold their respective offices notwithstanding such appointments without the consent of the senate.

4. No written authorization for the continuation of *Reuben Knutson* in office as a member of the industrial commission after October 1, 1963, having been filed as required by sec. 66.906 (1) (a), Stats., his said office became vacant.

5. The appointment by the governor of *O. L. Hidde* as a member of the state board of examiners in chiropractic not having been consented to by the senate, the governor's appointment of a successor on October 7, 1963, operated as a removal of O. L. Hidde from said office.

6. It is the duty of Dena A. Smith as state treasurer to pay salaries provided for the various offices involved herein consistent with the determination made in this judgment.

BEILFUSS, J., took no part.