STATE EX REL. REYNOLDS and others, Petitioners, v. SMITH, Respondent.

*January 23—February 7, 1964.*

For the petitioners there was a brief and oral argument by *Leonard F. Schmitt* of Merrill.

For the respondent the cause was argued by *Roy G. Tulane,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, and *Lyle E. Strahan,* deputy attorney general.

CURRIE, C. J. The statute governing the appointment of the director of resource development is sec. 109.02, Stats., and that with respect to the appointment of the commissioner of administration is sec. 16.003 (2). Both statutes provide that the appointment is to be made by the governor "with the advice and consent of the senate." Under the decision of this court in *State ex rel. Thompson v. Gibson* (1964), ante, p. 275, 125 N. W. (2d) 636, the recess appointments of September 26, 1963, and October 8, 1963, of Zeidler and Koop were valid and effective when made and they would continue as *de jure* officers until such time as the senate acted on their appointments. The senate did so act on November 13, 1963, by rejecting the appointments.

This terminated the *de jure* status of these two appointees. Because the legislature was in session when the reappointments of November 15, 1963, were made, they were wholly ineffectual to confer *de jure* status on the appointees until such time as the senate should act thereon, which the senate failed to do. Petitioners ground no claim of right to hold their respective offices on the November 15, 1963, reappointments, but rely on the further new reappointments of December 3, 1963, while the legislature was in recess. The attorney general, representing the respondent, contends that the senate's rejection on November 13, 1963, of the former appointments of Koop and Zeidler bars these December 3, 1963, reappointments from having the effect of conferring a *de jure* status upon the two appointees.

Thus the principal issue presented for decision is the effect of the senate's rejection of November 13th on these new reappointments of December 3d. A subsidiary issue is whether Zeidler and Koop are entitled to payment of their salaries from November 24, 1963, to December 3, 1963, as *de facto* officers.

### *Effect of Senate's Rejection.*

The attorney general's principal argument may be summarized as follows :

When the legislature creates an office and provides that it is to be filled by appointment of the governor "with the advice and consent of the senate," the action of the senate in voicing such advice and consent is an important and material part of the appointive process which is not to be bypassed or thwarted. Therefore, in order to prevent such bypassing and thwarting of the senate's part in the appointive process, once the senate has voiced its advice and consent by rejecting an appointment, this action should be

held to continue in effect until such time as the senate affirmatively recedes therefrom. Sec. 17.20 (2), Stats.,[1] which permits the governor to appoint to a vacancy during recess of the legislature and for the appointee to immediately assume office, is an emergency measure so as to enable the wheels of government to operate. However, this statute provides for senate action on the appointment when the legislature is again in session. Such senate action should not be necessary where the senate has already acted by rejecting this same appointee to the same vacancy while the legislature was previously in session.

This argument is essentially one grounded on public policy and would make a strong appeal to us were we sitting as a legislature, or had we a choice in laying down a rule of law in a situation where there was no controlling statute. However, we are here confronted with an issue of statutory interpretation, the statute being sec. 17.20 (2). The only action by the senate, which is required by this statute with respect to a recess appointment, is specifically stated to be that taken "at the next regular session." The statutory words "at the next regular session" were interpreted in *State ex rel. Thompson v. Gibson, supra,* to mean when the legislature reconvenes after recess. To hold that a rejection by the senate of the appointee to the same vacancy, to which the governor has reappointed him after the legislature has recessed, constitutes a standing rejection that carries over

[1] Sec. 17.20 (2), Stats., provides:

"Vacancies occurring during the recess of the legislature in the office of any officer appointed by the governor by and with the advice and consent of the senate shall be filled by appointment by the governor for the residue of the unexpired term, subject to confirmation by the senate at the next regular session thereof if the term for which the person was so appointed has not expired. Any such appointment subject to confirmation by the senate shall be in full force until acted upon by the senate, and when confirmed by the senate shall continue for the residue of the unexpired term."

and automatically bars the appointee from assuming office, would be to read something into the statute by implication. Not only is the statute complete and operative without this, but the reading of such a provision into it by implication would conflict with the words "at the next regular session."

We are of the opinion that to adopt the construction urged by the attorney general would be an act of unjustifiable judicial legislation, and would violate the firmly established doctrine that "a *casus omissus*" does not justify judicial legislation. See *Rusk Farm Drainage Dist. v. Industrial Comm.* (1925), 186 Wis. 232, 202 N. W. 204, and 50 Am. Jur., Statutes, pp. 221 to 223, sec. 234. This self-imposed rule of judicial restraint is equally applicable even where the omission was a mere oversight on the part of the legislature and where the statute would have been drawn otherwise had the legislature been cognizant of its omission. *DuPont v. Mills* (1937), 39 Del. 42, 196 Atl. 168, 119 A. L. R. 174.

The attorney general advances the further argument in support of its contention, that the rejection by the senate on November 13, 1963, of the appointments of Zeidler and Koop, carried over and prevented them from becoming *de jure* officers when reappointed December 3, 1963. This is that such rejection constituted a removal from office so as to make applicable sec. 17.16 (10), Stats., which provides, "A person lawfully removed from office shall be ineligible to appointment or election to fill the vacancy caused by such removal." A reading of entire sec. 17.16 convinces us that this statute has no application to the termination of the right of an appointee, who was appointed pursuant to sec. 17.20 (2), to fill a vacancy during the recess of the legislature, to continue to occupy the office to which appointed. This is because this statute deals with removals from office by affirmative action of the appointive power, and requires the entry and filing of an order of removal. It clearly does not

embrace the creation of a vacancy in office occasioned by action of the senate in rejecting a recess appointment made under sec. 17.20 (2), and therefore the ineligibility provision of sub. (10) of sec. 17.16 has no application to Zeidler's and Koop's recess appointments of December 3, 1963.

Thus we conclude that the rejection by the senate on November 13, 1963, of the prior recess appointments of these two officers had no effect on their right to assume the offices to which appointed under their subsequent recess appointments by the governor on December 3, 1963. They will continue as *de jure* officers under such latter appointments until such time as the senate acts thereon.

*Right to Compensation for Period of November 24 to December 3, 1963.*

The first step in determining the right of Zeidler and Koop to the salary of the respective offices of director of resource development and commissioner of administration for the period of November 24 to December 3, 1963, is to ascertain whether they sustained the status of *de facto* officers during such period. As a general rule, all that is required to make an officer *de facto* is that the individual claiming the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment. *Schoonover v. Viroqua* (1944), 245 Wis. 239, 244, 14 N. W. (2d) 9; *State ex rel. Jones v. Oates* (1893), 86 Wis. 634, 638, 57 N. W. 296; and 3 McQuillin, Mun. Corp. (3d ed.), p. 438, sec. 12.102. Zeidler and Koop clearly met this test of *de facto* officers during this period.

While the general rule seems to be that a *de facto* officer cannot maintain an action to recover the salary of the office, there is a well-recognized exception where there is no *de jure* officer claiming the office, and the *de facto* officer

entered upon the duties of the office in good faith and pursuant to apparent authority. 43 Am. Jur., Public Officers, p. 237 *et seq.,* sec. 488; 67 C. J. S., Officers, p. 446, sec. 145; Annos. 93 A. L. R. 258, 266, and 151 A. L. R. 952, 956; and 4 McQuillin, Mun. Corp. (3d ed.), p. 29 *et seq.,* sec. 12.181.

The leading Wisconsin case on the subject is *State ex rel. Elliott v. Kelly* (1913), 154 Wis. 482, 143 N. W. 153. The rationale of the holding in that case is well stated in these words of the opinion (p. 489) :

"We decline to follow the lead of courts which deny the right to compensation to officers *de facto* who have, in good faith, performed the duties of a *de jure* office, when there is no other person who, under any circumstances, can properly claim the salary incident. The salary of an office is an incident thereto and not, necessarily, an incident to service by a *de jure* incumbent. Therefore, in case of the incumbency being, in good faith, by an officer *de facto,* and no adverse claimant, there is no justice in denying to the occupant the compensation incident to the place during such incumbency if the corporation is willing to grant it."

The color of title under which Zeidler and Koop claim their respective offices during the period of November 24 to December 3, 1963, was the November 15th appointment while the legislature was in session made two days after the senate had rejected the prior-made recess appointments of these two men to the same offices. Under these circumstances, we think that the requirement of good faith means only whether these men could have had a reasonable expectation that the executive appointment would receive senate consent and thus confer a *de jure* status. The crucial issue, therefore, is whether the situation permitted such reasonable expectation to exist.

We would have a different situation if, at the time Zeidler and Koop were appointed on November 15th to offices

then vacant, there had been no prior senate rejection of themselves as appointees to these same vacancies. In that situation it would seem reasonable that they could have immediately entered upon the duties of their respective offices in the reasonable expectation that the senate would probably act favorably on their appointments. However, in the instant situation it would be entirely unreasonable for Zeidler and Koop, when they assumed the duties of their respective offices pursuant to the appointment of November 15th, to expect that the senate, which two days before had rejected their prior appointments, would recede from such position. Therefore, they are not entitled to compensation for the period of November 24 to December 3, 1963.

*By the Court.*—It is adjudged and determined:

1. That the appointments of Frank P. Zeidler as director of resource development and Howard J. Koop as commissioner of administration made by the governor under date of December 3, 1963, were valid and effective without the consent of the senate when made and, that, if such officers have properly qualified as required by law, they are entitled to hold these offices until acted upon by the senate.

2. That there is no duty on the part of respondent Dena A. Smith, the state treasurer, to pay the salaries of the offices of director of resource development and commissioner of administration to Zeidler and Koop for the period of November 24 to December 3, 1963; but that there is a duty on her part as state treasurer to pay their salaries for the period commencing December 3, 1963, and she is hereby directed to pay such salaries in accordance with this judgment.