PATRICK J. LUCEY Governor
SARAH M. DEAN, Secretary Department of Regulation and Licensing
Questions have arisen as to the legal status of nominees to recently created state offices, which have previously been unfilled. It is my understanding that you wish my advice on such questions. The state offices involved are positions created by ch. 86, Laws of 1 975, consisting of new citizen memberships on the various examining boards of this state, on the Board of Nursing, and on the Pharmacy Internship Board. Nominees to the offices in question are "nominated by the governor, and with the advice and consent of the senate appointed." Sec. 15.08(1), Stats.
All the nominees in question have been nominated while the 1975 Legislature has been in session. To my personal knowledge, one such nominee was nominated while the 1975 Legislature was in recess, and others among such nominees may have been nominated during a recess of the 1975 Legislature; but for a reason shown below, it is *Page 34 
immaterial whether such nominations were made during a recess of the Legislature.
None of the nominations in question has been confirmed by the Senate. Consequently, none of the nominees involved have been appointed with the advice and consent of the Senate.
At least one of such nominees (the one above mentioned who was nominated while the Legislature was in recess) has not as yet assumed the duties of the position for which he has been nominated, and this may be true of others among the nominees here involved. However, some of such nominees have already assumed the duties of their respective positions, and have engaged in full-fledged participation as board members. It is my understanding that such nominees (hereinafter called "active nominees") have collected per diems under sec. 15.08 (7), Stats., and have also been reimbursed for their actual and necessary expenses incurred in the performance of their duties. It is possible that some or all of the active nominees have unpaid claims for per diems and actual and necessary expenses.
GENERAL DISCUSSION
The first question raised is whether a nominee of the Governor to a newly created, previously unfilled state office, not yet appointed to such office with the advice and consent of the Senate, and not yet performing its duties, can lawfully proceed to perform those duties prior to his appointment to such office with the advice and consent of the Senate. In my opinion, he cannot.
A basic and general principle here involved, supported by ample case law, is that, "Where an appointment is made as the result of a nomination by one authority and confirmation by another, theappointment is not valid and complete until the action of allbodies concerned has been taken." (Emphasis supplied; 67 C.J.S.Officers sec. 32.) This principle is subject, however, to exceptions created by the Legislature. Two such exceptions are to be found in sec. 17.20 (2), Stats., and in sec. 14.22, Stats.
Section 17.20 (2), Stats., provides that:
 "Vacancies occurring during the recess of the legislature in the office of any officer normally nominated by the governor, and with the advice and consent of the senate appointed, shall be filled by appointment by the governor for the residue of the *Page 35 unexpired term, subject to confirmation by the senate at the next regular session thereof if the term for which the person was so appointed has not expired. Any such appointment subject to confirmation by the senate shall be in full force until acted upon by the senate, and when confirmed by the senate shall continue for the residue of the unexpired term." (Emphasis supplied.)
Section 17.20 (2), Stats., does not apply to a newly created state office, previously unfilled, because it deals only with vacancies and appointed state offices. "Vacancy" is defined in sec. 17.03, Stats. Newly created, unfilled state offices are not considered vacancies.[1]
Section 14.22, Stats., provides that,
 "Whenever the governor is authorized to make any nomination to office for appointment by and with the advice and consent of the senate, and the legislature is not in session at the time such office should be filled, he may make appointment thereto, subject to the approval of the senate at the next succeeding session of the legislature, and all such appointments shall be as valid and effectual from the time when so made until 20 days after such meeting of the legislature as if he possessed the absolute power of appointment." (Emphasis supplied.)
This section is broad enough to encompass appointment by the Governor to a newly created, previously unfilled office, but only in the situation where the Legislature "is not in session at the time such office should be filled." While the Legislature is "in recess" when it suspends business procedure for a comparatively short time, the "not in session" language found in sec. 14.22, Stats., connotes a termination or dissolution of the session of the Legislature. See State ex rel. Thompson v. Gibson, 22 Wis.2d 275,289, 125 N.W.2d 636 (1964). The 1975 Legislature was "in recess" when at least one of the nominees in question was nominated, but it was then in session, and consequently sec. 14.22 is clearly inapplicable to his situation, or *Page 36 
to that of any others of such nominees who were nominated during a recess.
Under these general principles, it is my opinion that any one of the nominees in question, who has not yet performed the duties of the office to which he has been nominated, cannot proceed to perform such duties as an officer de jure. These nominations do not fall within any statutory exception.
DE FACTO OFFICERS
A. INACTIVE NOMINEES
The second question is whether such inactive nominees could nevertheless proceed to perform the duties of the office to which they are nominated on the basis of being de facto officers? In my opinion the answer is no. The Wisconsin supreme court has stated that, "As a general rule, all that is required to make an officerde facto is that the individual claiming the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment." State ex rel.Reynolds v. Smith, 22 Wis.2d 516, 522, 126 N.W.2d 215 (1964). Under such rule, any nominee of those nominees here in question who has not been performing the duties of the office for which he was nominated obviously can make no valid claim to having been or being a de facto officer as to such office. The nominee above-mentioned who has not yet performed any of the duties of the office for which he was nominated can, for that reason alone, make no valid claim to having been or being a de facto officer in such office.
The third question is whether a currently inactive nominee, despite the present want of de facto officer stat us, could proceed to achieve de facto status prospectively by taking possession of the office, and exercising its powers, doing so under color of a letter and certificate of appointment. In my opinion, this question cannot be answered unequivocally. I assume that the inactive nominees will be promptly advised of the contents of this letter; and being so advised, they will then, in my judgment, obviously be rendered incapable of taking possession, in good faith, of the offices for which they have been nominated.
In State ex rel. Elliott v. Kelly, 154 Wis. 482, 489,143 N.W. 153 (1913), the court very clearly indicated that an essential element of *Page 37 
attaining de facto officer status in an office was the taking possession of it "in good faith"; but State ex rel. Reynolds v.Smith, cited supra, 22 Wis.2d 516, 522-524, citing and quotingState ex rel. Elliott v. Kelly in support of another proposition, strangely enough appears to hold that one can become an officerde facto without having taken possession of the office "in good faith." Such apparent holding is found in the court's ruling that Howard J. Koop and Frank P. Zeidler were de facto officers of the State of Wisconsin during the period of November 24 to December 3, 1963 (22 Wis.2d at p. 522); and in the further ruling that, under certain described circumstances, they could not, at the commencement of such period, have entered upon the duties of their respective offices in good faith (22 Wis.2d at 523, 524). In the light of the apparent conflict between the two Wisconsin cases, and the doubt raised thereby, I must qualify any conclusion. However, with such qualification it is my opinion that presently inactive nominees who have not yet performed any of the duties of the offices for which they were nominated, cannot prospectively achieve de facto status in such offices simply by taking possession thereof and exercising their powers, under "color of appointment."
B. ACTIVE NOMINEES
The fourth and fifth questions relate to the "active nominees" who have entered upon the duties of the offices for which they were nominated. The fourth question is whether the active nominees are entitled to the per diems and the actual and necessary expenses incurred in the performance of their duties already paid, and the per diems and expenses claimed but not yet paid? The fifth question is whether their official acts, taken in carrying out the duties of their respective offices, are valid and effectual? These are close questions with precedents and arguments to support either answer. On balance, I am of the opinion that the answer is yes to both such questions, because the active nominees acted as de facto officers in carrying out the duties of their respective offices.
As shown above, our Supreme Court has said, "As a general rule, all that is required to make an officer de facto is that the individual claiming the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment." State ex rel. Reynolds v. Smith, supra. It is my understanding that the active nominees did perform the duties of their respective offices. I *Page 38 
have no doubt that each active nominee thought himself to be in possession of his respective office and actually exercised its functions.
From the language in State ex rel. Reynolds v. Smith one might conclude the third attribute required to make an officer de facto
is "claiming to be such an officer under color of an election or an appointment." (Emphasis supplied.) This language appears to be unsupported by the two earlier Wisconsin cases cited as supporting it. Those cases and other Wisconsin cases clearly show that such third test of the de facto officer is not a "claiming" to be such officer under color of an election or appointment, but instead the holding of such office and the performance of its duties by or under color of title, right, authority, or law, and not merely under claim to such color. See Schoonover v. Viroqua,245 Wis. 239, 244, 14 N.W.2d 9 (1944); The State ex rel. Jones v.Oates, 86 Wis. 634, 638, 57 N.W. 296 (1893); Clausen v. Fond duLac County, 168 Wis. 432, 434, 435, 170 N.W. 287 (1919); Cole v.The President and Trustees of the Village of Black River Falls,57 Wis. 110, 113, 114, 14 N.W. 906 (1883). See also 67 C.J.S. Officers
sec. 138. The language of Cole, it should be noted, showing that the third test of a de facto officer is that he act "by color of law," is quoted with obvious approval in Burton v. StateAppeal Board, 38 Wis.2d 294, 305, 156 N.W.2d 386 (1968), even though on the preceding page of such case there appears the different language from State ex rel. Reynolds v. Smith. I am convinced that a proper statement of the third test of an officerde facto is that the office of which he has possession, if appointive, is held — not just claimed to be held — under color of an appointment.
Do the active nominees here in question hold their offices under color of an appointment? In my opinion, they do, even though none of such nominees has yet been appointed to the office for which he has been nominated.
Nominees to the offices in question are, pursuant to sec. 15.08
(1), Stats., "nominated by the governor, and with the advice and consent of the senate appointed." (Emphasis supplied.) This statutory language might be read as meaning that nomination and appointment are two completely separate and distinct acts, so that one merely "nominated" by the Governor pursuant to sec.15.08 (1), Stats., for an office could not, upon taking possession of it and performing its duties, be properly viewed as having possession of such office under color of an appointment thereto. However, I think that *Page 39 
nomination and appointment under sec. 15.08 (1), Stats., are not so completely separate and distinct as to compel the adoption of this view. I view the nomination under sec. 15.08 (1), Stats., as the initial step of appointment, even though the Senate has the power to deny appointment to the nominee. This initial step in the appointment process, in and of itself, is probably inadequate to vest a nominee taking possession of the office for which he was nominated, and performing its duties, with an airtight claim to holding such office under color of appointment. Where, however, the nomination is accompanied by gubernatorial action indicating that such nominee has received an appointment to such office, although "Senate confirmation" had not yet been obtained, in good faith, it is my opinion that the nominee taking possession of office and carrying out its duties then holds such office under color of appointment.
From information supplied me by the Executive Office, it appears that each of the nominees here in question received a letter from the Governor, which read:
 "I am very pleased to enclose the certificate of your appointment as a member of [Here the appropriate examining board was named].
 "I know that you will make a significant contribution to the _______________'s work, and I look forward to your accomplishments as a member. Your willingness to serve the people of Wisconsin in this way is deeply appreciated."
Such letter clearly conveys the idea to its recipient that he is "in business" as a Board member. So, too, does the certificate of his appointment enclosed with the letter. A "colorable right to an office" is "usually to be found in a certificate of electionor a commission of appointment by the legally constitutedauthority . . . ." (Emphasis supplied; 67 C.J.S. Officers sec. 138.) Each active nominee's receipt of such letter and certificate of appointment further supports my conclusion that when he took possession of his respective office and commenced performance of its duties he held such office under color of appointment.
The active nominees have taken possession of their respective offices and commenced performance under gubernatorial action which reinforces their claim to their respective offices. It is therefore *Page 40 
my opinion that they have been acting in such offices as de facto
officers.
Because the active nominees here in question have been officersde facto with respect to their respective offices, it is my further opinion that such active nominees were entitled to the per diems and the actual and necessary expenses incurred in the performance of their duties, which per diems and expenses have already been paid them; and that they are also entitled to collect for per diems and such expenses already claimed, but not yet paid. They were and are so entitled because they entered upon the duties of their respective offices in good faith and pursuant to apparent authority, for reasons above-shown, and because, in the case of each active nominee, no de jure officer is claiming his office. See State ex rel. Reynolds v. Smith, cited supra,22 Wis.2d 516, 522, 523; State ex rel. Elliott v. Kelly, 154 Wis. 482,489, 143 N.W. 153 (1913). See also 67 C.J.S. officers sec. 145.
The fifth question is whether the acts of such active nominees to date are valid.
It is my opinion that since the active nominees have been defacto officers in performing, to date, the respective duties of their offices, the official acts performed by them as de facto
officers are valid and effectual as to the public and third parties. See Burton v. State Appeal Board, 38 Wis.2d 294, 304,305, 156 N.W.2d 386 (1968); Cole v. The President and Trusteesof the Village of Black River Falls, 57 Wis. 110, 113, 114,14 N.W. 906 (1883); 67 C.J.S. Officers sec. 146.
FUTURE SERVICE OF ACTIVE NOMINEES
The sixth question is whether the active nominees may continue to perform their duties following this opinion but before confirmation and collect per diems and expenses under sec. 15.08
(7), Stats.? The seventh question is whether, if they so continue, their official actions will be valid and effectual as to the public and to third parties?
It is my opinion that if an active nominee continues to perform his duties after this opinion issues (at which time he will presumably be made aware of its contents), challenges may arise if he files claims for per diems for services thereafter rendered and expenses thereafter incurred. Such nominee would have difficulty, after the issuance of *Page 41 
this opinion, claiming that he was performing the duties of his office under color of election or appointment.
As stated above, he has no present right in law to such office and the exercise of its powers. In this connection, the Wisconsin supreme court, in a case it later described as the "leading" case on compensation for the de facto officer, said: "We decline to follow the lead of courts which deny the right to compensation to officers de facto who have, in good faith, performed the duties of a de jure office, when there is no other person who, under any circumstances, can properly claim the salary incident." (Emphasis supplied; State ex rel. Elliott v. Kelly, cited supra,154 Wis. at p. 489, quoted in State ex rel. Reynolds v. Smith, 22 Wis.2d p. 523, where it is described as the "leading" case.) This language would appear to indicate that our supreme court views it as essential to upholding a de facto officer's claim for compensation that it be based on duties performed "in good faith," i.e., in an honest belief, reasonably induced, that he held his office lawfully. However, in State ex rel. Reynolds v.Smith, the court said: "While the general rule seems to be that ade facto officer cannot maintain an action to recover the salary of the office, there is a well-recognized exception where there is no de jure officer claiming the office, and the de facto officer entered upon the duties of the office in good faith andpursuant to apparent authority." (Emphasis supplied.)
This language can be read as indicating that so long as a defacto officer has entered upon the duties of his office "in good faith and pursuant to apparent authority," he is entitled to collect the compensation for such office, even though he may thereafter be advised by the Attorney General, directly or indirectly, that he has no lawful claim to such office. This argument is buttressed by that case law which holds that a defacto officer is a legal officer until ousted. See State v.Britton, 27 Wash.2d 336, 178 P.2d 341, 346 (1947).
However, none of these cases involve a situation where the de facto
office is claiming expenses or salary after having been advised that he has no de jure claim to the office. The question of whether continued belief in apparent legal authority is necessary to maintain de facto status is not clearly answered by the cases. In State ex rel. Reynolds v. Smith, claims for compensation, after reappointment following Senate rejection of the claimants for the same positions, were denied on the basis that it was unreasonable for the claimants to expect the *Page 42 
Senate to recede. The effect of this opinion declaring that the nominees in question have no de jure status may have similar effect. Because of these questions, I would advise a cautious approach and recommend that no claims for expenses or per diems be made.
As to the seventh question, it is my opinion that the active nominees in question, continuing to perform the duties of their respective offices after the issuance of this opinion, and presumably with knowledge of its contents, probably will be performing official acts which are valid and effectual as to the public and third parties. However, there is some doubt about this answer because of the absence of cases directly on point.
No case law has been discovered ruling precisely on this question; but it appears that the case law, mentioned above, which holds that a de facto officer is a legal officer until ousted, intimates that all his official acts until ousted must be deemed valid and effectual as to the public and third persons. InIn re Burke, 76 Wis. 357, 363, 45 N.W. 24 (1890), it was said that earlier Wisconsin cases established "that if the office has been lawfully established, and a person exercises the functions thereof by color of right, but whose election or appointment thereto is illegal, his official acts therein cannot be successfully attacked in collateral proceedings, but in all such proceedings will be held valid and binding until the officer is ousted by the judgment of a court in a direct proceeding to try his title to the office." I read this case as a Wisconsin adoption of the view that a de facto officer is a legal officer until ousted, and as supportive of the opinion above-stated. See also Pamanet v. State, 49 Wis.2d 501, 507, 508, 182 N.W.2d 459
(1971).
However, my conclusion cannot be stated with certainty for the reasons stated in response to the previous questions. I think that the active nominees here in question, in deciding whether to continue performance of the duties of their respective offices, without Senate confirmation, might be taking the wiser and more commendable course of action if they decided to resume such performance only if and when confirmed. This course of action avoids potential difficulties in obtaining compensation for their services. Moreover, the continued functioning of the active nominees as de facto officers after the issuance of this letter may conceivably produce court challenges to their official acts, which will be expensive for Wisconsin taxpayers and this office. *Page 43 
In closing, let me summarize my conclusions.
First, it is my opinion that all the nominees in question, under the circumstances here involved, have acquired no de jure
status in their respective offices, and can acquire no such status unless and until they are appointed to such offices with the advice and consent of the Senate.
Second, it is my opinion, although qualified, that the nominees who have not yet performed the duties of their respective offices cannot now commence such performance. under a claimed de facto
occupancy of such offices.
Third, it is my opinion that those nominees who have performed the duties of their respective offices — the so-called "active nominees" — have been holding such offices as defacto officers, and are entitled to the per diems and expenses already collected, and are entitled to those claimed but not yet paid.
Fourth, in view of the de facto status of such active nominees, it is my opinion that their past official actions are binding and valid as to the public and third parties.
Fifth, if the active nominees continue to perform their duties before confirmation, their acts will probably be valid and they will probably be eligible for expenses and per diems. However, payment of future per diems and expenses could be challenged, and there is doubt as to the validity of their acts.
Sixth, the active nominees might be taking the wiser and more commendable course of action if they decided to discontinue performance of the duties of the offices to which they were nominated, and to resume such performance only if and when appointed to such offices with the advice and consent of the Senate.
BCL:JHM
[1] Offices newly established upon creation by the Legislature of a new county and a new town are recognized as vacancies. Such vacancies, so created, are not of the type covered by sec. 17.20 (2), Stats. The existence of sec. 17.03
(12), Stats., under which only a very narrow class of newly created public offices are considered vacancies, strongly intimates that all other newly created public offices are not to be deemed vacancies, under an application of the well-known rule of statutory construction that, "The inclusion of one is the exclusion of another."