# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP559 |
| COMPLETE TITLE: | The League of Women Voters, Disability Rights of Wisconsin, Inc., Black Leaders Organizing for Communities, Guillermo Aceves, Michael J. Cain, John S. Greene and Michael Doyle, in his official capacity as Clerk of Green County, Plaintiffs-Respondents, v. Tony Evers, Defendant-Respondent, Wisconsin Legislature, Intervening Defendant-Appellant. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | June 21, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | May 15, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Richard G. Niess |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | DALLET, J. dissents, joined by ABRAHAMSON, J., and A.W. BRADLEY, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the intervening-defendant-appellant, there were briefs filed by *Misha Tseytlin* and *Troutman Sanders LLP.*, Chicago, Illinois. There was an oral argument by *Misha Tseytlin*.

For the defendant-respondent, there was a brief filed by *Tamara B. Packard*, *Lester A. Pines*, *Aaron G. Dumas*, *Beauregard W. Patterson*, and *Pines Bach LLP*, Madison. There was an oral argument by *Tamara B. Packard*.

For the plaintiffs-respondents, there was a brief filed by *Jeffrey A. Mandell*, *Kurt M. Simatic*, and *Stafford Rosenbaum LLP*, Madison. With whom on the brief was *Deana K. El-Mallawany*, *Ben Berwick*, and *The Protect Democracy Project, Inc.*, Watertown, Massachusetts; along with *Lawrence S. Robbins*, *Carolyn Forstein*, *Wendy Liu*, and *Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP.*, Washington, DC. There was an oral argument by *Jeffrey A. Mandell*.

An amicus curiae brief was filed on behalf of Wisconsin Democracy Campaign by *Jeanne M. Armstrong*, *Christopher J. Dodge*, and *Fuhrman & Dodge, S.C.*, Middleton.

An amicus curiae brief was filed on behalf of Wisconsin Manufacturers & Commerce by *Corydon J. Fish* and *Wisconsin Manufacturers & Commerce*.

An amicus curiae brief was filed on behalf of Law School Professors *Hal Harlow* and *Murphy Desmond, S.C.*, Madison; with whom on the brief was *Daniel Hemel* and *University of Chicago Law School*, Chicago, Illinois.

An amicus curiae brief was filed on behalf of Legal Scholars by *Barry J. Blonien*, *Eric A. Baker*, and *Boardman & Clark LLP*, Madison; with whom on the brief was *Robert Yablon* and *University of Wisconsin Law School*, Madison.

An amicus curiae brief was filed on behalf of Sustain Rural Wisconsin Network, River Alliance of Wisconsin, Friends of the Lower Wisconsin Riverway, and Milwaukee Riverkeeper by *Robert D. Lee* and *Midwest Environmental Advocates*, Madison.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2019AP559
(L.C. No. 2019CV84)

STATE OF WISCONSIN       :     IN SUPREME COURT

**League of Women Voters of Wisconsin, Disability Rights Wisconsin, Inc., Black Leaders Organizing for Communities, Guillermo Aceves, Michael J. Cain, John S. Greene and Michael Doyle, in his official capacity as Clerk of Green County,**

     **Plaintiffs-Respondents,**

   **v.**

**Tony Evers, in his official capacity as Governor of the State of Wisconsin,**

     **Defendant-Respondent,**

**Wisconsin Legislature,**

     **Intervening Defendant-Appellant.**

**FILED**

**JUN 21, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

APPEAL from an order of the Circuit Court for Dane County, Richard G. Niess, Judge. *Vacated and cause remanded for dismissal.*

¶1 REBECCA GRASSL BRADLEY, J. We accepted the League of Women Voters of Wisconsin's[1] petition to bypass the court of

---

[1] The petition was filed by the League of Women Voters of
(continued)

appeals in order to decide whether the Wisconsin Legislature's December 2018 extraordinary session comported with the Wisconsin Constitution. The League maintains that extraordinary sessions are unconstitutional; therefore, all legislation passed during the December 2018 session is void ab initio and the Senate's confirmation of 82 gubernatorial appointees during the session was invalid.[2] Governor Tony Evers agrees with the League. The Legislature argues that extraordinary sessions clearly conform with the Wisconsin Constitution and Wis. Stat. § 13.02 (2017-18), making the passage of the three Acts as well as the appointments entirely lawful.[3] The circuit court agreed with the League and the Governor, declared the Acts unconstitutional, and issued a temporary injunction enjoining the enforcement of all three Acts and vacating all 82 appointments.

¶2 We hold that extraordinary sessions do not violate the Wisconsin Constitution because the text of our constitution directs the Legislature to meet at times as "provided by law," and Wis. Stat. § 13.02(3) provides the law giving the

---

Wisconsin, Disability Rights Wisconsin, Inc., Black Leaders Organizing for Communities, Guillermo Aceves, Michael J. Cain, John S. Greene and Michael Doyle, in his official capacity as Clerk of Green County. For ease of reference, we refer to all petitioners collectively as the "League."

[2] The three Acts passed during the December 2018 extraordinary session and subsequently signed by the Governor were 2017 Wisconsin Act 368, 2017 Wisconsin Act 369, and 2017 Wisconsin Act 370.

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

Legislature the discretion to construct its work schedule, including preserving times for it to meet in an extraordinary session. The work schedule the Legislature formulated for its 2017-2018 biennial session established the beginning and end dates of the session period and specifically contemplated the convening of an extraordinary session, which occurred within the biennial session. The circuit court invaded the province of the Legislature in declaring the extraordinary session unconstitutional, enjoining enforcement of the three Acts, and vacating the 82 appointments. We vacate the circuit court's order and remand the matter to the circuit court with directions to dismiss the League's complaint.[4]

## I. BACKGROUND

¶3 The biennial session period for the 2017 Legislature began on Tuesday, January 3, 2017 and ended at noon on Monday, January 7, 2019. The Legislature adopted its work schedule in 2017 Senate Joint Resolution 1, which was "[r]esolved by the senate, the assembly concurring." (Hereinafter "JR1".)

---

[4] The circuit court's March 21, 2019 order also denied the Legislature's motion to dismiss as well as the Legislature's motion for a stay of the temporary injunction. We need not specifically address the circuit court's action on either motion. Orders from the court of appeals and this court already addressed the circuit court's denial of the Legislature's motion for a stay. Our disposition vacates the circuit court's order in its entirety and requires dismissal of the League's declaratory judgment action. This decision upholds the constitutionality of their enactment in an extraordinary session.

3

¶4 JR1 contains two "Sections." "Section 1" has six subsections:

- Subsection (1) lists the dates of the 2017-2018 session——January 3, 2017 to January 7, 2019.

- Subsection (2) extends the statutorily prescribed budget deadline.

- Subsection (3) sets forth "Scheduled floorperiods and committee work periods."

- Subsection (4) sets the timeframe for the "Interim period of committee work."

- Subsection (5) addresses "Special and Extraordinary Sessions."

- Subsection (6) specifies the date for the "End of Term" of the 2017 legislature.

¶5 Subsection (3) of Section 1 contains 24 paragraphs labeled (a) through (x). Paragraph (3)(a) addresses "Unreserved days" and provides:

> Unless reserved under this subsection as a day to conduct an organizational meeting or to be part of a scheduled floorperiod of the legislature, every day of the biennial session period is designated as a day for committee activity and is available to extend a scheduled floorperiod, convene an extraordinary session, or take senate action on appointments as permitted by joint rule 81.

(Emphasis added.) Paragraphs (3)(b)-(x) set specific dates for "Inauguration," "Floorperiod[s]," "Bills to governor," "Nonbudget bills to governor," "Budget bill to governor," "Last general-business floorperiod," "Limited-business floorperiod," and "Veto review floorperiod."

4

¶6 Subsection (5) of Section 1, titled "Special and Extraordinary Sessions" comprises three paragraphs. Paragraph (5)(a) provides:

> Adjournment. Except for consideration of executive vetoes or partial vetoes, a motion adopted in each house to adjourn a special or extraordinary session pursuant to this joint resolution shall constitute final adjournment of the special or extraordinary session.

Paragraph (5)(b) provides:

> Bills to governor. No later than 4:30 p.m. on the first Thursday occurring 2 full weeks after the day a bill is passed by both houses in identical form after May 9, 2018, in special or extraordinary session, the chief clerk of the house in which it originated shall submit it to the governor for executive action thereon.

Paragraph (5)(c) provides:

> Veto review. A special or extraordinary session shall reconvene upon a call of a majority of the members of the joint committee on legislative organization solely for the consideration of executive vetoes or partial vetoes if an enrolled bill passed by both houses during the special or extraordinary session was vetoed or partially vetoed.

¶7 The last subsection of Section 1 sets the "end of term" and provides:

> The biennial term of the 2017 legislature ends on Monday, January 7, 2019. Pursuant to section 13.02(1) of the statutes, the inauguration of the members of the 2019 legislature will be on Monday, January 7, 2019.

¶8 Finally, Section 2 of JR1 provides notice of the first meeting date for the 2019 session organization:

> Notice is hereby given that the biennial session of the 2019 legislature will hold its first meeting,

5

pursuant to section 13.02(1) of the statutes, on Monday, January 7, 2019, and that the meeting will begin at 2 p.m.

¶9 In December 2018, acting pursuant to JR1, Section 1, para. (3)(a), the Legislature convened an extraordinary session and passed three Acts that were subsequently signed into law by Governor Scott Walker: (1) 2017 Wisconsin Act 368, (2) 2017 Wisconsin Act 369, and (3) 2017 Wisconsin Act 370. During the same extraordinary session, the Senate also confirmed 82 appointees nominated by Governor Walker.[5]

¶10 On January 10, 2019, the League filed a summons and complaint seeking a declaratory judgment and injunctive relief. The League asked the Dane County Circuit Court to declare the three Acts unconstitutional and unenforceable because, the League alleged, each was passed in a constitutionally invalid session. Similarly, the League contended in its Complaint that confirmation of the 82 nominees during the extraordinary session was unconstitutional and unenforceable. The Complaint sought an injunction "barring any State official from attempting to apply, implement, or enforce any actions taken by the Legislature at the December 2018 Extraordinary Session[.]" The case was assigned to Branch 15, the Hon. Stephen E. Ehlke presiding.

¶11 Five days later, the League filed an Amended Complaint and a motion for a temporary injunction. Both Complaints named

---

[5] The 82 nominees confirmed during the extraordinary session involved appointments to various "State authorities, boards, councils, and commissions."

6

as Defendants seven officers of the Wisconsin Elections Commission and Governor Tony Evers. Two weeks later, the Legislature filed a motion to intervene. On the same day, the League filed a request for substitution of Judge Ehlke, which was granted, and the case was reassigned to the Hon. Richard G. Niess. Judge Niess granted the Legislature's motion to intervene.[6] The Elections Commission defendants and the Legislature filed motions to dismiss. The Legislature also filed a motion requesting a stay of any injunction the circuit court might issue.

¶12 The circuit court held a hearing on all of the pending motions. Before the circuit court ruled on the Elections Commission Defendants' dismissal motion, the parties stipulated to their dismissal. In March 2019, the circuit court issued an order denying the Legislature's motion to dismiss, granting the temporary injunction, and denying the Legislature's motion to stay the injunction. The Legislature appealed to the court of appeals and after a substantial number of filings and procedural matters not relevant here, the League filed a petition with this court requesting to bypass the court of appeals and asking "for expedited Supreme Court review" because uncertainty will loom until this court provides the "final resolution."[7] We granted

---

[6] For the remainder of the opinion, we refer to Judge Niess as "the circuit court."

[7] This court recounted in detail the procedural history of this case in its order dated April 30, 2019, which addressed the Legislature's request for temporary relief pending our review.

7

the League's bypass petition, adopted an accelerated briefing schedule, and heard oral argument on May 15, 2019.

## II. ANALYSIS

### A. Standard of Review

¶13 The dispositive issue presented is whether the Legislature convened its December 2018 extraordinary session in accordance with the Wisconsin Constitution. The answer to that question requires interpretation of constitutional and statutory provisions, both of which involve questions of law we review de novo. See Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶14, 319 Wis. 2d 439, 768 N.W.2d 700.

### B. Relevant Constitutional and Statutory Provisions

¶14 There are two constitutional provisions relevant to the issue in this case. Wisconsin Constitution Article IV, Section 11 provides:

> Meeting of legislature. SECTION 11. [As amended Nov. 1881 and April 1968] The legislature shall meet at the seat of government at such time as shall be provided by law, unless convened by the governor in special session, and when so convened no business shall be transacted except as shall be necessary to accomplish the special purposes for which it was convened.

(Emphasis added.) Wisconsin Constitution, Article IV, Section 8 says:

> Rules; contempts; expulsion. SECTION 8. Each house may determine the rules of its own proceedings, punish for contempt and disorderly behavior, and with the concurrence of two-thirds of all the members elected, expel a member; but no member shall be expelled a second time for the same cause.

(Emphasis added.)

8

¶15 The pertinent statute, Wis. Stat. § 13.02, provides:

Regular sessions. The legislature shall meet annually.

(1) The legislature shall convene in the capitol on the first Monday of January in each odd-numbered year, at 2 p.m., to take the oath of office, select officers, and do all other things necessary to organize itself for the conduct of its business, but if the first Monday of January falls on January 1 or 2, the actions here required shall be taken on January 3.

(2) The regular session of the legislature shall commence at 2 p.m. on the first Tuesday after the 8th day of January in each year unless otherwise provided under sub. (3).

(3) Early in each biennial session period, the joint committee on legislative organization shall meet and develop a work schedule for the legislative session, which shall include at least one meeting in January of each year, to be submitted to the legislature as a joint resolution.

(4) Any measures introduced in the regular annual session of the odd-numbered year which do not receive final action shall carry over to the regular annual session held in the even-numbered year.

(Emphasis added.)

C. Constitutional and Statutory Interpretation

¶16 Article IV, Section 11 of the Wisconsin Constitution describes when the Legislature meets: "The legislature shall meet at the seat of government at such time as shall be provided by law, unless convened by the governor in special session[.]" The text of this constitutional provision is plain. No one disputes that this sentence authorizes the Legislature to meet

9

at the State Capitol "at such time as shall be provided by law."[8] All parties agree that the drafters of the Wisconsin Constitution meant the Wisconsin Statutes when they used the phrase "provided by law." We agree that "provided by law" means our statutes, and have specifically said so. See State v. City of Oak Creek, 2000 WI 9, ¶27, 232 Wis. 2d 612, 605 N.W.2d 526 ("[T]he drafters meant statutory law when they used the phrase, 'provided by law.'") (emphasis added).

¶17 Accordingly, the Wisconsin Constitution authorizes the Legislature to lawfully meet when a statute so provides. Wisconsin Statute § 13.02 is the sole statute addressing when the Legislature can meet. Subsection (1) sets the date, time, and location for the Legislature to convene to take oaths, select officers, and organize. Subsection (2) sets the date and time for the regular session to begin unless the Legislature changes them under sub. (3). Subsection (3) directs that early in the "biennial session" "the joint committee on legislative organization shall meet and develop a work schedule for the legislative session[.]" (Emphasis added.) Subsection (4) permits bills in the first year to carry over to the second year of the biennial session.

---

[8] Article IV, Section 11 authorizes two times when the Legislature may meet: (1) when "provided by law"; and (2) when the governor calls a "special session." It is undisputed that the Governor did not call a "special session"; therefore, we consider only whether the extraordinary session was "provided by law."

¶18 The parties delve deep into past practices of the Legislature, as well as a 1968 constitutional amendment.[9] A historical review, however, is unnecessary to resolve this case. There is no dispute as to the meaning of the governing constitutional text, which requires the Legislature to meet at such time as provided by statutory law. The controversy centers on whether the text of Wis. Stat. § 13.02(3), which authorizes the Legislature's joint committee on legislative organization to develop a work schedule, allows the Legislature to constitutionally convene an extraordinary session.

¶19 Our analysis therefore turns to the interpretation of Wis. Stat. § 13.02(3). In interpreting a statute's text, we start with the language of the statute and if the meaning of the language is plain, our inquiry ordinarily ends. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The text of § 13.02(3) is plain. It authorizes the Legislature's joint committee on legislative organization to set the "work schedule" for the biennial term.

¶20 Wisconsin Stat. § 13.02(3) imposes only two statutory limitations on that committee: the work schedule "shall include at least one meeting in January of each year" and must "be

---

[9] Before the 1968 constitutional amendment, Article IV, Section 11 read:

> Meeting of legislature. The legislature shall meet at the seat of government at such time as shall be provided by law, once in two years, and no oftener, unless convened by the governor, in special session[.]

11

submitted to the legislature as a joint resolution." It is uncontroverted that the committee developed a work schedule that included at least one meeting each January of the biennial session period, and that the work schedule was submitted to the Legislature as a joint resolution and was enrolled as JR1.[10]

¶21 The pivotal text within Wis. Stat. § 13.02(3) is "work schedule" and the dispositive question is whether the work schedule can specify when the Legislature will meet. The law itself says so. Given the nature of the legislative function, a "work schedule" for the Legislature necessarily expresses when the body will meet. The Legislature consists of the people's representatives who are elected to meet and enact laws for Wisconsin. State ex rel. Milwaukee Med. Coll. v. Chittenden, 127 Wis. 468, 502, 107 N.W. 500 (1906) ("The constitutional authority vested in the legislature appertains wholly to the making of law."). A "work schedule" in the context of a legislature would be meaningless without specifying when and how to meet. The Legislature cannot perform its constitutionally assigned work unless it meets in the chambers of the Senate and the Assembly at the State Capitol to vote on proposed legislation. The plain text of § 13.02(3), directing a committee of the Legislature to "develop a work schedule for the legislative session," satisfies the "provided by law" requirement under Article IV, Section 11 of the Wisconsin

---

[10] No one disputes that the Legislature complied with JR1.

12

Constitution. The work schedule dictates when the Legislature will meet, in accordance with the constitution.

¶22 The League and the Governor recognize Wis. Stat. § 13.02 as the "law" referenced in Article IV, Section 11 setting forth when the Legislature can meet, but contend this statute limits the Legislature's meeting to the "regular" session only. They argue that the statute does not authorize the "extraordinary" session. While the statute does not use the term "extraordinary" session, the absence of that word in § 13.02 does not make an extraordinary session unconstitutional, just as the absence of the words "floorperiods," and "committee work periods" from the statute doesn't make those meetings unconstitutional either. If "extraordinary sessions" are unconstitutional because the term does not appear in § 13.02, so are "floorperiods" and any other characterization the Legislature adopts to describe its business.

¶23 When asked during oral argument why the nonappearance of "floorperiods" in Wis. Stat. § 13.02 does not render them unconstitutional, the League's counsel pointed to JR1. The League's counsel argued that floorperiods are constitutional because JR1 sets forth floorperiods as part of the regular session. JR1 says no such thing. JR1 mentions floorperiods, but nowhere does it confine floorperiods to regular sessions. The only reference to "regular" sessions within JR1 appears in six paragraphs concerning "bills to governor" in which JR1 sets deadlines for sending bills to the governor that have "been passed by both houses, in regular, extraordinary, or special

13

session." JR1, Section 1, paragraphs (3)(h), (k), (L), (t), (v), and (x). Bills are passed during floorperiods, and JR1 ties floorperiods to all three types of sessions: regular, extraordinary, and special sessions. Floorperiods are either prescheduled in JR1 or they occur in extraordinary or special sessions, which by their nature have not been assigned prescheduled dates.

¶24 The League alternatively suggests that "floorperiods" are fine because they are part of the "regular session." While Wis. Stat. § 13.02 does use the term "regular session," nowhere does the statute say "floorperiods" are part of the "regular session." The term "floorperiods" does not appear in the statute at all. "Floorperiods," like "extraordinary sessions," are terms the Legislature uses in setting its work schedule in order to conduct the business pertinent to the legislative process. The specific terminology it chooses is not prescribed or limited by our constitution or by statute.[11]

¶25 The League also argues that the Legislature terminated its 2017-18 session when it concluded its "last general-business floorperiod, which was adjourned on March 22, 2018." It contends the conclusion of that floorperiod constituted a _sine_

---

[11] The terminology chosen by the Legislature occasionally finds its way into individual statutes. _See, e.g.,_ Wis. Stat. § 13.625(1m)(b)1 ("A contribution to a candidate for legislative office may be made during that period only if the legislature has concluded its final _floorperiod_, and is not in special or _extraordinary session_.") (emphasis added).

14

die adjournment,[12] which prevented the 2017-18 Legislature from reconvening unless the Governor called a special session. Characterizing the conclusion of the March 22, 2018 floorperiod as a sine die adjournment directly conflicts with both the work schedule adopted in JR1, as well as cases defining sine die adjournment.

¶26 The 2017-18 Legislature's session began in January 2017, in accordance with the dates required by Wis. Stat. § 13.02. The Legislature's session continued pursuant to the work schedule enrolled as JR1, which plainly sets forth the beginning and end of the 2017-18 biennial session. The Legislature continued its biennial session until January 7, 2019, consistent with both the text of § 13.02(3) and this court's cases. The Legislature is "in session" continually during the biennial session until a sine die adjournment. State ex rel. Thompson v. Gibson, 22 Wis. 2d 275, 289-90, 125 N.W.2d 636 (1964) (citing State ex rel. Sullivan v. Dammann, 221 Wis. 551, 555, 267 N.W. 433 (1936)). In Thompson, we held "that one single session may be interrupted by recesses, and valid[ly] continue after a recess as long as such recesses can reasonably be said to be taken for a proper legislative purpose." 22

---

[12] "Sine die" means "without day"; adjournment sine die means: "The ending of a deliberative assembly's or court's session without setting a time to reconvene." Adjournment sine die, Black's Law Dictionary (10th ed. 2014); see also State ex rel. Sullivan v. Dammann, 221 Wis. 551, 559, 267 N.W. 433 (1936) ("When a Legislature adjourns sine die, it ceases to exist[.]").

15

Wis. 2d at 290. A sine die adjournment occurs only "[w]hen a Legislature . . . ceases to exist . . . [i]ts officers are no longer officers. Their tenure of office ends at the moment of adjournment." Dammann, 221 Wis. at 559.

¶27 Neither the record nor JR1 supports a sine die adjournment on March 22, 2018. When the Legislature adjourned on March 22nd, it did so pursuant to JR1, which provides the 2017-18 session ends on January 7, 2019. There is no indication the Legislature altered that date. Further, JR1 established a "limited-business floorperiod" to commence on April 17, 2018, and a "veto review floorperiod" to commence on May 8, 2018. Both of these floorperiods post-date March 22, 2018, directly contradicting the League's notion of a sine die adjournment in March. If the Legislature adjourned sine die on March 22nd, these floorperiods and the additional parts of JR1, Section 1, paragraphs (3)(t)-(x) would be superfluous, as would JR1, Section 1, sub (6), which specifically set the "end of term" as January 7, 2019. Nothing supports the League's position that the Legislature adjourned sine die on March 22, 2018.

¶28 The Wisconsin Constitution mandates that the Legislature meet "at such time as shall be provided by law." The Legislature did so. Wisconsin Stat. § 13.02(3) confers on the Legislature, through its joint committee on legislative organization, the right to construct its own work schedule, which necessarily includes setting times when the Legislature may meet. In addition to being authorized by Article IV, Section 11, this statutory provision is expressly authorized

16

under Article IV, Section 8 of the Wisconsin Constitution, which says: "Each house may determine the rules of its own proceedings." The Legislature's "rules of its own proceedings" include "those rules having 'to do with the process the legislature uses to propose or pass legislation[.]'" Milwaukee Journal Sentinel, 319 Wis. 2d 439, ¶18 (quoting Custodian of Records for the LTSB v. State, 2004 WI 65, ¶30, 272 Wis. 2d 208, 680 N.W.2d 792). The constitution does not mandate any procedural rules governing the enactment of legislation; rather, it merely directs the Legislature to prescribe its time of meeting "by law" and empowers the Legislature "to determine the rules of its own proceedings." Because the Legislature met its constitutional obligation to provide by law the time of its meetings, any recourse against errors in the execution of the Legislature's own procedures is properly pursued within the political realm not in courts of law.

### D. Separation of Powers

¶29 The League asks this court to invalidate laws enacted by the Legislature based solely on the procedures employed to pass them. This controversy implicates the separation of powers between the legislative and judicial branches of government and how the Legislature may administer those powers within its domain. We are attentive to the constitutional limits on the judicial power to intercede in legislative affairs, and duty-bound to respect them.

¶30 "[O]ne of the fundamental principles of the American constitutional system is that governmental powers are divided

17

among the three departments of government[.]"  Goodland v. Zimmerman, 243 Wis. 459, 466, 10 N.W.2d 180 (1943).  "Like its federal counterpart, '[o]ur state constitution . . . created three branches of government, each with distinct functions and powers,' and '[t]he separation of powers doctrine is implicit in this tripartite division.'"  Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶11, 376 Wis. 2d 147, 897 N.W.2d 384 (quoted source omitted; alterations and ellipsis by Gabler).  "Three clauses of the Wisconsin Constitution embody this separation:  Article IV, Section 1 ('[t]he legislative power shall be vested in a senate and assembly'); Article V, Section 1 ('[t]he executive power shall be vested in a governor'); and Article VII, Section 2 ('[t]he judicial power . . . shall be vested in a unified court system')."  Gabler, 376 Wis. 2d 147, ¶11 (alterations and ellipsis by Gabler).

¶31  By vesting certain powers exclusively within each of the three co-equal branches of government, the drafters of the Wisconsin Constitution recognized the importance of dispersing governmental power in order to protect individual liberty and avoid tyranny.  See id., ¶¶4-9, 11.  Two years ago, this court exhaustively examined the separation of powers principles underlying the United States Constitution, which "inform our understanding of the separation of powers under the Wisconsin Constitution."  Id., ¶11.  "As Madison explained when advocating for the Constitution's adoption, neither the legislature nor the executive nor the judiciary 'ought to possess, directly or indirectly, an overruling influence over the others in the

18

administration of their respective powers.'"  Id., ¶4 (quoting Federalist No. 48, at 305 (James Madison) (Clinton Rossiter ed., 1961)).

¶32 Accordingly, "the Constitution gives 'to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others,' therefore guaranteeing 'security against a gradual concentration of the several powers in the same department.'"  Gabler, 376 Wis. 2d 147, ¶7 (quoting Federalist No. 51, supra ¶31, at 318-19 (James Madison)).  In the same fashion as the United States Constitution, the Wisconsin Constitution preserves the independence of each branch vis-a-vis the others and precludes each branch from obstructing the performance of another branch's constitutional duties.  United States v. Klein, 80 U.S. (13 Wall.) 128, 147 (1872) ("It is the intention of the Constitution that each of the great co-ordinate departments of the government——the Legislative, the Executive, and the Judicial—— shall be, in its sphere, independent of the others.");  see also Loving v. United States, 517 U.S. 748, 757 (1996) ("Even when a branch does not arrogate power to itself, moreover, the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." (citing Mistretta v. United States, 488 U.S. 361, 397-408 (1989)).

¶33 "Each branch has exclusive core constitutional powers into which other branches may not intrude."  State v. Horn, 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999) (citing State ex rel.

19

Friedrich v. Circuit Court for Dane Cty., 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995)).  "This court is highly mindful of the separation of powers.  It does not engage in direct confrontation with another branch of government unless the confrontation is necessary and unavoidable."  State v. Moore, 2015 WI 54, ¶91, 363 Wis. 2d 376, 864 N.W.2d 827; see also Integration of Bar Case, 244 Wis. 8, 48, 11 N.W.2d 604 (1943) ("The state suffers essentially by every . . . assault of one branch of the government upon another; and it is the duty of all the co-ordinate branches scrupulously to avoid even all seeming of such." (quoting In re Goodell, 39 Wis. 232, 240 (1875)).

¶34  "[C]ore zones of authority are to be 'jealously guarded' by each branch of government."  Barland v. Eau Claire Cty., 216 Wis. 2d 560, 573, 575 N.W.2d 691 (1998) (citing Friedrich, 192 Wis. 2d at 14).  "The co-ordinate branches of the government . . . should not abdicate or permit others to infringe upon such powers as are exclusively committed to them by the Constitution."  Rules of Court Case, 204 Wis. 501, 514, 236 N.W. 717 (1931).  "Each branch's core powers reflect 'zones of authority constitutionally established for each branch of government upon which any other branch of government is prohibited from intruding.  As to these areas of authority, . . . any exercise of authority by another branch of government is unconstitutional.'"  Gabler, 376 Wis. 2d 147, ¶31, (quoting State ex rel. Fiedler v. Wisconsin Senate, 155 Wis. 2d 94, 100, 454 N.W.2d 770 (1990) (ellipsis by Gabler)).  In Gabler, this court invalidated a legislative action because

20

it invaded the exclusive province of the judiciary and threatened judicial independence. In this case, we reverse a judicial encroachment on the exercise of powers constitutionally vested exclusively in the Legislature.

### E. The Legislative Power

¶35 "The people bestowed much power on the legislature, comprised of their representatives whom the people elect to make the laws." Gabler, 376 Wis. 2d 147, ¶60. The separation of powers "operates in a general way to confine legislative powers to the legislature." Goodland, 243 Wis. at 467. "From the very nature of things, the judicial power cannot legislate nor supervise the making of laws." State ex rel. Rose v. Superior Court of Milwaukee Cty., 105 Wis. 651, 675, 81 N.W. 1046 (1900).

¶36 The judiciary may not interfere with the Legislature's execution of its constitutional duties. "[T]his court will not, under separation of powers concepts and affording the comity and respect due a co-equal branch of state government, interfere with the conduct of legislative affairs." State ex rel. La Follette v. Stitt, 114 Wis. 2d 358, 368, 338 N.W.2d 684 (1983). The proper judicial role does encompass consideration of the constitutionality of the laws enacted by the Legislature. "When the legislative process has been completed, a court may then in a proper case consider whether the power of the legislature has been constitutionally exercised or whether the law enacted in the exercise of its power is valid." Goodland, 243 Wis. at 469. The process by which laws are enacted, however, falls beyond the powers of judicial review.

21

Specifically, the judiciary lacks any jurisdiction to enjoin the legislative process. "Because under our system of constitutional government, no one of the co-ordinate departments can interfere with the discharge of the constitutional duties of one of the other departments, no court has jurisdiction to enjoin the legislative process at any point." Id. at 468. For example, "[i]f a court can intervene and prohibit the publication of an [A]ct, the court determines what shall be law and not the legislature." Id. Judicial interference with the procedures employed by the Legislature to pass laws "invades the constitutional power of the legislature to declare what shall become law. This it may not do." Id. While it is the duty of the judiciary to interpret the law and to strike any law whose substance violates the constitution, the judiciary has no authority "to interfere with the right of the legislature to enact and put in force a law." Id. at 469.

¶37 How the Legislature meets, when it meets, and what descriptive titles the Legislature assigns to those meetings or their operating procedures constitute parts of the legislative process with which the judicial branch "has no jurisdiction or right" to interfere. State ex rel. Ozanne v. Fitzgerald, 2011 WI 43, ¶8, 334 Wis. 2d 70, 798 N.W.2d 436 (quoted source omitted).

> The judicial department has no jurisdiction or right to interfere with the legislative process. That is something committed by the constitution entirely to the legislature itself. It makes its own rules, prescribes its own procedure, subject only to the provisions of the constitution.

22

Goodland, 243 Wis. at 467.  No court may "intermeddle in purely internal legislative proceedings[.]"  Milwaukee Journal Sentinel, 319 Wis. 2d 439, ¶18.

¶38 With respect to legislative procedures, the judicial role consists of reviewing whether "a law was actually passed by the respective houses in accordance with constitutional requirements."  La Follette, 114 Wis. 2d at 366 (quoting McDonald v. State, 80 Wis. 407, 411-12, 50 N.W. 185 (1891)).  "Further than this the courts will not go."  McDonald, 80 Wis. at 412.  The constitutional requirement at issue in this case limits the Legislature to meeting only at times provided by law.  Wisconsin Stat. § 13.02(3) satisfies the Wisconsin Constitution by authorizing the Legislature's own committee to set its work schedule.

¶39 While we have examined the work schedule the Legislature adopted in JR1 to govern its proceedings, generally "this court will not determine whether internal operating rules or procedural statutes have been complied with by the legislature in the course of its enactments."  La Follette, 114 Wis. 2d at 364.  We reviewed JR1 for the limited purpose of ensuring the Legislature's compliance with the constitution's directives governing the exercise of legislative powers.  Those directives are few in number and broadly stated.  As pertinent to this case, the constitution requires the Legislature to meet at such time as the Legislature itself statutorily decrees, and confers discretion on the Legislature to determine for itself the rules of its own proceedings.  This court "will not

23

intermeddle in what we view, in the absence of constitutional directives to the contrary, to be purely legislative concerns[.]" Id. In convening the December 2018 extraordinary session, the Legislature fully complied with all applicable constitutional mandates. Our judicial review proceeds no further.

¶40 Declining to "inquire into whether the legislature has complied with legislatively prescribed formalities in enacting a statute" springs from the principles of "separation of power and comity." Id. at 364-65. "[T]he legislature's adherence to the rules or statutes prescribing procedure is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by the constitution." Id. at 365. "If the legislature fails to follow self-adopted procedural rules in enacting legislation, and such rules are not mandated by the constitution, courts will not intervene to declare the legislation invalid." Id.

¶41 The Legislature remains accountable to the people of Wisconsin for any failure to follow its self-imposed statutory or procedural rules. The judiciary serves as a check on the Legislature's actions only to the extent necessary to ensure the people's elected lawmakers comply with our constitution in every respect. Provided the Legislature acts in accordance with its mandates, the constitution confers no power on the judiciary to enjoin or invalidate laws as a consequence for deficiencies in the implementation of internally-imposed legislative procedures.

III. CONCLUSION

24

¶42 The December 2018 extraordinary session of the Wisconsin Legislature was constitutional. The text of Article IV, Section 11 of the Wisconsin Constitution directs the Legislature to meet at a time provided by law. Wisconsin Stat. § 13.02(3) constitutes the law authorizing the Legislature to set its own biennial work schedule. The extraordinary session comports with the constitution because it occurred as provided by law. The terminology the Legislature chooses to accomplish the legislative process is squarely the prerogative of the Legislature. The Wisconsin Constitution itself affords the Legislature absolute discretion to determine the rules of its own proceedings. Wis. Const. art. IV, § 8. Recognizing the Legislature's rules and procedures reside solely within the legislative domain, we review only whether the Legislature acted in accordance with the Wisconsin Constitution. Having so concluded, this court's jurisdiction ends.[13]

*By the Court.*—Order of the circuit court is vacated and the cause is remanded for dismissal.

---

[13] The League also contends the extraordinary sessions were unlawful because no quorum of the Legislature called the extraordinary session. The Wisconsin Constitution requires a quorum "to do business." Wis. Const. art. IV, § 7 ("a majority of each shall constitute a quorum to do business"). Nothing in our constitution requires a "quorum" to call an extraordinary session. Rules pertaining to extraordinary sessions are developed by the Legislature as rules of its own proceedings, with which this court will not "intermeddle." Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶18, 319 Wis. 2d 439, 768 N.W.2d 700; Wisconsin Const., art. IV, § 8 ("Each house may determine the rules of its own proceedings.").

¶43 REBECCA FRANK DALLET, J. *(dissenting).* The Legislature unconstitutionally met in an "extraordinary session" in December 2018 and therefore 2017 Wisconsin Act 368, 2017 Wisconsin Act 369, and 2017 Wisconsin Act 370 are void ab initio and the Senate's confirmation of 82 gubernatorial appointments is invalid. In order to uphold the constitutionality of the December 2018 extraordinary session, the majority opinion subverts the plain text of Article IV, Section 11 of the Wisconsin Constitution. Therefore, I dissent.

¶44 Constitutional interpretation is a question of law that we review de novo. Appling v. Walker, 2014 WI 96, ¶17, 358 Wis. 2d 132, 853 N.W.2d 888. We look first to the words of the constitutional provision at issue to determine its meaning. See Coullee Catholic Schools v. LIRC, 2009 WI 88, ¶57, 320 Wis. 2d 275, 768 N.W.2d 868 (noting that the "authoritative, and usually final, indicator of the meaning of a provision is the text——the actual words used.") Constitutional language is to be read, whenever possible, to give reasonable effect to every word, in order to avoid surplusage. See Appling, 358 Wis. 2d 132, ¶23.

¶45 Article IV, Section 11 of the Wisconsin Constitution constrains the Legislature from meeting except under two circumstances: (1) "at such time as shall be provided by law," and (2) "unless convened by the governor in special session." The majority agrees that "provided by law" means our statutes. Majority op., ¶16; see also State v. City of Oak Creek, 2000 WI

1

9, ¶27, 232 Wis. 2d 612, 605 N.W.2d 526 ("[T]he drafters meant statutory law when they used the phrase, 'provided by law.'"). The only "such time" that is "provided by law" for the Legislature to meet is set forth in Wis. Stat. § 13.02, entitled "Regular sessions." Subsection 1 of § 13.02 authorizes the Legislature to convene at the outset of the biennieum "to organize itself for the conduct of its business." Subsections 2 and 4, accordingly, describe when the regular session commences and the fate of measures that have not received final action by the adjournment of the regular session. Subsection 3 instructs the joint committee on legislative organization to meet early in each biennial session period to "develop a work schedule for the legislative session . . . to be submitted to the legislature as a joint resolution." § 13.02(3). Senate Joint Resolution 1 ("JR1") outlined the work schedule for the 2017-2018 biennial session period with dates upon which the floorperiods began and ended.[1]

¶46 The December 2018 extraordinary session was not a date identified in JR1. March 22, 2018, was the final date the

---

[1] For example, JR1 provides that "[a] floorperiod commences on Tuesday, January 16, 2018, at 10 a.m., and, unless adjourned earlier, ends on Thursday, January 25, 2018." JR1 prescribes times and dates for each event on the schedule. JR1 is also broken up into different sections, including "Floorperiod[s]," "last general-business floorperiod," "limited-business floor period," etc.

2

Legislature met pursuant to the work schedule[2] and, as was the practice at the end of each legislative session, bills that were not passed in identical fashion by both houses expired.[3] Although the Legislature can, utilizing proper procedure, recess and reconvene on a future specified date, pursuant to Thompson and Dammann, the Legislature set no future meeting date upon its adjournment. See State ex rel. Thompson v. Gibson, 22 Wis. 2d 275, 290, 125 N.W.2d 636 (1964); State ex rel. Sullivan v.

---

[2] JR1 states that "[t]he last general-business floorperiod commences on Tuesday, March 13, 2018, at 10 a.m., and, unless adjourned earlier, ends on Thursday, March 22, 2018."

[3] To disprove the fact that the Legislature adjourned sine die on March 22, 2018, the majority opinion points to JR1's identification of a "limited-business floorperiod" to commence on April 17, 2018 and end no later than April 19, 2018 and a "veto review floorperiod" to commence on May 8, 2018 and end no later than May 9, 2018. Majority op., ¶27. The Legislature did not make this argument on appeal, probably because it never actually met on those dates. As counsel for Governor Evers noted to the circuit court at oral argument: "[t]here were some sort of contingent dates [in April and May 2018], but they never actually came back for those dates." Senate and Assembly calendars and journals affirm the fact that the last date that the Legislature met in regular session was March 22, 2018.

Further, while the majority opinion asserts that the Legislature adjourned sine die on January 7, 2019, there is no proof presented or journal entries that document that date as the date of adjournment. The "Session Calendar" available on the Legislature's website says that "March 23, 2018 to January 7, 2019" is designated "Interim, committee work." See https://docs.legis.wisconsin.gov/2017/related/session_calendar/calendar; see also https://docs.legis.wisconsin.gov/2017/related/session_calendar/floor_period_calendar.pdf.

Dammann, 221 Wis. 551, 267 N.W.2d 433 (1936).[4]  As provided by law, the next regular session was set to commence on January 7, 2019, unless the Governor convened a special session.  On March 22, 2018, the Legislature adjourned sine die, or ceased to exist, as there were no future scheduled meetings of the regular session laid out in JR1.[5]  Therefore, there was no authority for the majority of members of two committees to convene a previously unscheduled meeting of the full Legislature in early December 2018.[6]

---

[4] Thompson and Dammann also clarify that it is the Legislature's lawmaking authority in session that terminates upon its sine die adjournment, not its other work functions, including committee meetings.  See State ex rel. Thompson v. Gibson, 22 Wis. 2d 275, 290, 125 N.W.2d 636 (1964); State ex rel. Sullivan v. Dammann, 221 Wis. 551, 267 N.W.2d 433, 437 (1936).  It is of no import to this case that committee work continued after March 22, 2018, because this work is not part of the Legislature's lawmaking authority and such committee meetings are not the type of meetings defined by Article IV, Section 11.

[5] As support for its assertion that the Legislature adjourned sine die on March 22, 2018, the League underscores how legislators and observers alike understood that the regular session ended on that date.  See, e.g., Rep. Hesselbein, Capitol Update (Apr. 13, 2018) ("The Wisconsin State Assembly wrapped up its floor period for the 2017-18 session on March 22."); Hamilton Consulting Group, LLC, Hamilton Political Tidbits–2018 Session Wrap Up (Mar. 23, 2018) ("[T[he legislature will not reconvene until January 2019."); Joe Forward, Legislative Wrap-Up, 10 Inside Track No. 6 (State Bar of Wisconsin), Apr. 4, 2018 ("The Wisconsin Legislature passed a barrage of bills [in March 2018] to close the 2017-18 session.").

[6] The December 2018 meeting of the Legislature was convened upon the votes of five members of the Assembly, out of 99 members, and three members of the Senate, out of 33 members.

4

¶47 The majority opinion subverts the constitutional text in two ways to legitimize the December 2018 extraordinary session. First, the majority opinion asserts that the extraordinary session was really part of a regular session because when the Legislature first met on January 3, 2017, to convene its regular session, it stayed in a continuous two-year "biennial session" until January 7, 2019.[7] It is elementary to point out that an "extraordinary," or "special," session by its very name, is the opposite of a "regular," or "planned," session. Although the title of Wis. Stat. § 13.02, "Regular sessions," alone is not dispositive, it is "persuasive evidence of a statutory interpretation." Mireles v. LIRC, 2000 WI 96, ¶60 n.13, 237 Wis. 2d 69, 613 N.W.2d 875.

¶48 Under the majority opinion's reading of Article IV, Section 11, the words "at such time" and "unless" become superfluous because the Legislature could meet at any time. Yet, this court has recognized that "[t]o avoid surplusage, our analysis must also take into account and give meaning to the choice of the word[s]" in the constitutional provision. Appling, 358 Wis. 2d 132, ¶25. A continuous two-year session

---

[7] The majority opinion continuously references the term "biennial session"; however, Wisconsin has not had a biennial legislative session for nearly 50 years. Since 1971, the law has mandated that the Legislature "shall meet annually." Wis. Stat. § 13.02. Section 13.02(3) says that the Legislature "shall" hold "at least one meeting in January of each year." If there is a singular meeting coextensive with the entire biennial session period, this phrase is meaningless.

5

would also render meaningless several other laws which distinguish between days that the Legislature is in session and days when it is not.[8]  The majority opinion fails to logically explain how a continuous two-year session comports with the constitutional mandate to meet at "such time as shall be provided by law."[9]

¶49 Second, the majority opinion further subverts the constitutional text by redefining the clause "as shall be provided by law" to include a joint resolution passed by the Legislature.[10]  The majority accepts the Legislature's assertion

---

[8] For example, Wis. Stat. § 13.625(1m)(b)1 prohibits lobbyists from making financial contributions to legislators until "the legislature has concluded its final floorperiod." Under this statutory section, no lobbyist could ever be certain that the Legislature "has concluded its final floorperiod." Further, Wis. Stat. § 757.13, which limits the courts' jurisdiction over members of the Legislature while they are "in session," would be rendered virtually meaningless if the Legislature was in one perpetual session.  Finally, Wis. Stat. § 13.123, which sets forth the extent to which legislators are entitled to a per diem allowance for food and lodging, would be meaningless if the Legislature met perpetually.  Under the majority's reasoning, legislators would be entitled to per diem reimbursement every day of every year, which undermines the entire purpose of a per diem reimbursement.

[9] Since 1848, Article IV, Section 11 has been amended twice, but it is noteworthy that neither revision has transferred extraordinary convening authority to the Legislature.

[10] In a novel argument that the majority raises on behalf of the Legislature, it asserts that like extraordinary sessions, floorperiods are not mentioned in the statutory text.  Majority op., ¶22.  However, as counsel for the League properly pointed out at oral argument, the work schedule, which governs the regular session, references floorperiods and the legislative journals inform us that floorperiods have long been considered part of the regular session.  On the other hand, non-
(continued)

6

that the work schedule set forth in JR1 allowed the Legislature to reserve to itself every unscheduled day for the possible convening of an extraordinary session. I agree with the circuit court that the Legislature's purported ability to meet any day, even if it is not scheduled, is the antithesis of a work schedule as set forth in Wis. Stat. § 13.02(3) "by both definition and force of logic." The distinction between a session "provided by law" as set forth in § 13.02 and the Legislature's attempt to reserve to itself through a joint resolution the unlimited power to schedule an extraordinary session is made even clearer by the existence of specific statutory provisions that <u>do</u> explicitly set forth extraordinary sessions.[11]  <u>See, e.g.</u>, Wis. Stat. § 196.497(10)(c) ("[w]ithin 120 days after the bill is introduced the appropriate committees in each house of the legislature shall authorize an <u>extraordinary session</u> of the legislature to commence within the 120 days and to extend until the legislature passes the bill or passes a joint resolution which disapproves of the agreement or modification . . . ) (emphasis added); <u>see also</u> 1987 Wisconsin Act 4 (temporarily creating Wis. Stat. § 13.02(3m) to authorize an extraordinary session between the biennial session period's

---

prescheduled floor sessions, like the extraordinary session here, were not part of the regular session.

[11] The explicit reference to an extraordinary session in our statutes also shows that regular and extraordinary sessions are treated distinctly and are different in kind. This is more than just a dispute over taxonomy and the proper naming of sessions.

7

two regular annual sessions). Ultimately if the Legislature wanted to meet in December 2018 in accordance with the Constitution, it should have passed a bill to authorize extraordinary sessions, as it has done in the past.

¶50 In its analysis of the meaning of Article IV, Section 11, the majority opinion dismisses the importance of the intent of the drafters.[12] See majority op., ¶18. However, this court "gives[s] effect to the apparent understanding of the drafters and the people who adopted the constitutional provision under consideration." State v. Williams, 2012 WI 59, ¶15, 341 Wis. 2d 191, 814 N.W.2d 460. It is undisputed that at the time of its passage, Article IV, Section 11 was understood to place limits on legislative power. In 1848, the drafters sought to avoid a continuation of colonial-era abuses involving irregular meetings of the Legislature. See Robert Luce, Legislative Assemblies, at 123 (1924) (describing "irregularity of sessions []as a bitter grievance with the colonists"). The drafters accordingly constrained and limited the Legislature's power, including where, when, and how often it could meet. See G. Alan Tarr, Understanding State Constitutions, 65 Temple L. Rev, 1169, 1174 (1992) (noting that limitations on legislative power were "designed to ensure a more open and orderly deliberative

---

[12] Although the majority opinion labels proof of the drafter's intent an unnecessary "historical review," majority op., ¶18, it relies upon the drafter's intent in another section of its opinion where it bolsters its argument. See majority op., ¶31.

process . . . in response to widespread legislative abuses"). The Constitution therefore includes specific constraints on the Legislature in order to protect against "the tyranny of legislation." Views of "K"—No. 2, Madison Express (Mar. 26, 1846), reprinted in Milo M. Quaife, The Movement for Statehood 1845-1846, at 146 (State Historical Society of Wisconsin 1918). Despite this fear of legislative abuses and the drafters' goal to ensure transparency, the majority opinion now broadens the Legislature's powers.

¶51 The majority dedicates pages of its opinion to a discussion of separation of powers and "[t]he [l]egislative [p]ower." See majority op., ¶¶29-41. It fails to account for the fact that "[j]udicial respect for its co-equal branch, the legislature, cannot amount to surrender of judicial power or abdication of judicial duty." Mayo v. Wisconsin Injured Patients and Families Comp. Fund, 2018 WI 78, ¶84, 383 Wis. 2d 1, 914 N.W.2d 678 (R.G. Bradley, J, concurring). As the majority opinion correctly notes, "[t]he judiciary serves as a check on the Legislature's actions only to the extent necessary to ensure the people's elected lawmakers comply with our constitution in every respect." Majority op., ¶41. That is exactly what happened here: the Legislature violated the plain constitutional text, and this court must act as a check.

¶52 Wisconsin Constitution Article IV, Section 8 also cannot justify judicial non-interference here, as the majority opinion suggests. Article IV, Section 8 simply states: "[e]ach house may determine the rules of its own proceedings." Section

8 should not swallow Section 11 whole, as the majority opinion seems to suggest. According to the Legislature, Article IV, Section 8 gives it unlimited power to name and determine the procedures it follows, even if it acts in violation of Article IV, Section 11. The majority opinion claims that this court should not "'intermeddle in purely internal legislative proceedings,'" citing to Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶18, 319 Wis. 2d 439, 768 N.W.2d 700. Majority op., ¶37. However, in Milwaukee Journal Sentinel, this court acknowledged that while the Legislature has discretion in "choosing how to comply with the publication requirement" in Article IV, Section 17(2), it may not "ignore the constitutional publication requirement altogether."[13] Id., ¶33. Instead, this court defined its role as follows: "[w]hile we are conscious of the substantial deference we owe to the other independent branches of government in the exercise of their constitutional responsibilities, we are also conscious of our own responsibility to determine whether the provisions of the

---

[13] The Milwaukee Journal Sentinel court cited to La Follette in favor of that proposition. Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶18, 319 Wis. 2d 439, 768 N.W.2d 700 (citing La Follette v. Stitt, 114 Wis. 2d 358, 364, 338 N.W.2d 684 (1983)). In La Follette, this court held that it would not "review legislative conduct to ensure the legislature complied with its own procedural rules or statutes in enacting the legislation." La Follette, 114 Wis. 2d at 364. However, the court noted that this was because these were "purely legislative concerns" in the "absence of constitutional directives to the contrary." Id. In contrast, this case deals with constitutional requirements that the Legislature turned a blind eye to in December 2018.

10

Wisconsin Constitution have been followed." Id. The Legislature's ability to determine the rules of its proceedings pursuant to Article IV, Section 8 does not swallow up the meeting requirements of Article IV, Section 11 or allow it to wield unbridled power.

¶53 The plain constitutional text of Article IV, Section 11 makes clear that with the exception of the Governor's ability to call special sessions, the Legislature has authority to "meet" only at "such time as shall be provided by law." Yet, the majority opinion ignores this clear language and instead concludes that a joint resolution work schedule is "law" that allows for a continuous, perpetual legislative session and the ability to convene at any time without notice. Because the Legislature unconstitutionally met in an "extraordinary session" in December 2018, the passage of 2017 Wisconsin Act 368, 2017 Wisconsin Act 369, and 2017 Wisconsin Act 370 is void ab initio and the Senate's confirmation of 82 gubernatorial appointments is invalid.

¶54 I respectfully dissent. I would vacate the court of appeals' stay and affirm the circuit court.

¶55 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and ANN WALSH BRADLEY join this dissent.

11